# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0381

KEITH D. SNYDER, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 29, 2005        Decided     February 24, 2006  )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Ralph G. Davis,* with whom *Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, were on the brief for the appellee, all of Washington, D.C.

Before GREENE, *Chief Judge*, and KASOLD and DAVIS, *Judges*.

DAVIS, *Judge*: Attorney Keith D. Snyder appeals, through counsel, a February 2, 2004, decision of the Board of Veterans' Appeals (Board) that denied him entitlement under 38 U.S.C. § 5904 to attorney fees in excess of $1,820.45 payable from his client's award of past-due benefits. Because we hold that the amount of fees paid directly to an attorney from VA under § 5904(d) must be based on the amount of past-due payments that a veteran will actually receive, the Board's decision will be affirmed.

## I. BACKGROUND

In 1992, veteran John Creekmore was convicted of aggravated robbery and sentenced to 30 years' incarceration in a state prison. After an April 2000 Board decision denied his disability-compensation claim for his psychiatric disorder, the veteran retained counsel, Eric Conn, in July

2000. Mr. Conn later withdrew, claiming no entitlement to attorney fees. In May 2001, the veteran retained attorney Keith Snyder, and they executed a fee agreement that provided the following:

> [The veteran] agrees to pay a fee equal to 20 percent of the total amount of any past-due benefits awarded on the basis of the [veteran's] claim . . . . It is understood that this [c]ontingent fee is to be paid by the VA directly to [Mr. Snyder] from any past-due benefits awarded on the basis of the [veteran's] claim. However, [the veteran] remains liable for the amount of the contingent fee of 20 percent of any past-due benefits awarded on the basis of the [veteran's] claim until and unless the fee is paid to [Mr. Snyder] by the VA, and [the veteran] agrees to pay said contingent fee directly to [Mr. Snyder] in the event VA fails to do so.

Record (R.) at 49.

In July 2002, a VA regional office (RO) issued a decision granting service connection for a bipolar disorder and assigning a 70% disability rating, effective July 25, 1994. At the time of the RO decision, the veteran was still incarcerated. By letter, the RO informed the veteran and Mr. Snyder that because of the veteran's incarceration, the RO would withhold part of the monthly award and pay to the veteran reduced monthly compensation equivalent to a 10% disability rating in accordance with 38 U.S.C. § 1114(a). In this regard, the RO letter set forth a schedule of payments in table form; the first column indicated the "Total Award Amount" reflecting compensation for a 70% rating, the second column indicated the "Amount Withheld" pursuant to statute, and the third column reflected the veteran's "Monthly Entitlement Amount" which documented the 10% compensation that the veteran would actually receive. R. at 214. The RO letter informed the veteran that all or part of the amount withheld from his payments may be apportioned to dependents. Although paperwork regarding dependent identification was provided to the veteran, there is no evidence in the record indicating that he ever identified dependents or that any part of his award was apportioned; in fact, Mr. Snyder acknowledged at oral argument that there were no dependents. Finally, the RO calculated that it would withhold $1,820.45 from the veteran to pay to Mr. Snyder based on 20 percent of the past-due benefits that would be actually paid to the veteran after the award was reduced because of his incarceration. Mr. Snyder appealed that decision.

On February 2, 2004, the Board issued the decision now on appeal. The Board upheld the RO's determination after relying on the definition of "past-due benefits" as defined in 38 C.F.R. § 20.609(h)(3) (2003). The Board concluded that attorney fees should be calculated based on the

"actual lump sum paid to the veteran, and not on the total award amount." R. at 7. The Board placed significance on the statement in § 20.609(h)(1)(iii) that "an award of past-due benefits will not always result in a cash payment to a claimant or an appellant." *Id.* The Board also reasoned that statutory and regulatory language prohibits VA from paying in excess of 20 percent of past-due benefits to an attorney, but does not mandate that award. Because the lump-sum payment owed to the veteran for the time period between August 1, 1994, and July 19, 2002, amounted to $9,102.23 after the payments were reduced because of the veteran's incarceration (pursuant to 38 U.S.C. § 5313(a)(1), and its implementing regulation, 38 C.F.R. § 3.665 (2003)), the Board found that the RO appropriately calculated 20 percent of that amount to determine Mr. Snyder's resulting $1,820.45 attorney fee. Mr. Snyder appealed to the Court.

## II. CONTENTIONS ON APPEAL

On appeal, Mr. Snyder presents several arguments for reversal of the Board's decision. First, he contends that the Board misinterpreted and misapplied 38 U.S.C. § 5904(d)(2)(A)(i), which states that a fee agreement "is one under which the total amount of the fee payable to the attorney is to be paid to the attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim." Appellant's Brief (Br.) at 4. He argues that the veteran's 70% disability award was made "on the basis of the claim" that Mr. Snyder filed on the veteran's behalf (*id.* at 5), and it is the veteran, not the attorney, who is prohibited from receiving the full amount of the award. He maintains that the award of service connection in the July 2002 RO decision resulted in an award of past-due benefits amounting to $91,022.30. Therefore, he asserts that although the law required the amount of the award to the veteran to be reduced because of his incarceration, the Board erred by reducing Mr. Snyder's compensation based on the statute and regulations directed only to the veteran.

Next, Mr. Snyder contends that the Board erred when it failed to discuss 38 C.F.R. § 3.665. Additionally, Mr. Snyder argues that the Board misapplied § 20.609(h)(1); he asserts that when the three predicate regulatory conditions are met, VA is required to pay the attorney 20 percent of the total amount awarded to the veteran as called for in the fee agreement. In support of that contention, Mr. Snyder proffered at oral argument that section 5904 creates an implied-in-fact contract between an attorney and VA. Finally, Mr. Snyder argues that the Board misinterpreted § 20.609(h)(3)

3

(defining past-due benefits) by adding the word "actual" to the regulation's phrase "lump sum paid to the veteran." *Id*. at 10. Therefore, he seeks reversal of the Board's decision and an award to him of attorney fees in the amount of $18,204.46.

In response, the Secretary seeks a remand of the matter for further development and reajudication. He asserts that the Board decision does not contain an adequate statement of reasons or bases for the conclusion that attorney fees should be calculated based on the reduced amount actually paid to the veteran. The Secretary notes that the key question is how to apportion "proceeds among the veteran, his attorney, and any eligible dependents," but the Secretary does not proffer an argument as to the correct outcome. Secretary's Br. at 8-11. Although the Secretary seeks remand for further development on the issue of the veteran's dependents, that issue was mooted by Mr. Snyder's statement at oral argument that there are no dependents to whom an apportionment may be made.

In reply, Mr. Snyder argues that the Secretary failed to address the arguments raised in his initial brief and, instead, conceded an error not alleged (inadequate statement of reasons or bases) "in order to avoid an interpretation by this Court of the relevant statutes and regulations placed at issue," and to give the Board an additional opportunity to apply applicable laws without the benefit of this Court's interpretation. Appellant's Reply Br. at 2-3. Additionally, Mr. Snyder states that whether the veteran has any dependents is irrelevant and that the veteran is not an interested party in this suit. Finally, Mr. Snyder reiterates that, based on the evidence, there is no plausible basis for the Board's decision, and it should be reversed.

### III. ANALYSIS
#### A. Applicable Laws and Regulations
##### *1. Attorney Fees*

Under 38 U.S.C. § 5904(c)(1), a fee may not be charged, allowed, or paid for attorney services that were provided before the date on which the Board first made a final decision on the issues involved in the case. 38 U.S.C. § 5904(c)(1); *see In re Fee Agreement of Smith*, 4 Vet.App. 487, 490 (1993). If the attorney is retained within one year after the first final Board decision, attorney fees are allowed. *See* 38 U.S.C. § 5904(c)(1). In order for an attorney to have his or her

4

fees paid directly from VA, "the total fee payable to the attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim." 38 U.S.C. § 5904(d)(1).

Title 38, § 20.609(h), Code of Federal Regulations, the regulation implementing 38 U.S.C. § 5904, reiterates that fee agreements are permissible and, when specified in the agreement, attorney fees will be paid directly from VA "out of any past-due benefits awarded" if certain conditions are met. 38 C.F.R. § 20.609(h) (2005). The fee agreements must meet the following conditions for VA direct payment:

> (i) The total fee payable (excluding expenses) does not exceed 20 percent of the total amount of the past-due benefits awarded,
> (ii) The amount of the fee is contingent on whether or not the claim is resolved in a manner favorable to the claimant or appellant, and
> (iii) The award of past-due benefits results in a cash payment to a claimant or an appellant from which the fee may be deducted. (An award of past-due benefits will not always result in a cash payment to a claimant or an appellant. For example, no cash payment will be made to military retirees unless there is a corresponding waiver of retirement pay.)

38 C.F.R. § 20.609(h)(1) (citations omitted). In pertinent part, the regulation defines "past-due benefits" as follows:

> [A] nonrecurring payment resulting from a benefit . . . awarded on the basis of a claim reopened after a denial by the [Board] or the lump sum payment which represents the total amount of recurring cash payments which accrued between the effective date of the award . . . and the date of the grant of the benefit . . . .
> (i) . . . "[P]ast-due benefits" will be based on the initial disability rating assigned by the agency of original jurisdiction following the award of service connection. The sum will equal the payments accruing from the effective date of the award to the date of the initial disability rating decision.

38 C.F.R. § 20.609(h)(3) - (h)(3)(i).

### 2. Incarcerated Claimants

Under 38 U.S.C. § 5313, a person entitled to compensation for a service-connected disability rated at 20% or more, but who is incarcerated for a period in excess of 60 days, shall not be paid an amount that exceeds "the rate of compensation payable under [38 U.S.C. §] 1114(a)." 38 U.S.C. § 5313(a)(1), (a)(1)(A); *see* 38 U.S.C. § 1114(a) (allowing compensation based on a 10% disability rating). "All or any part of the compensation not paid to a veteran [(withheld because of incarceration)] may, as appropriate in an individual case, be apportioned" to the veteran's dependents

while the veteran is incarcerated.  38 U.S.C. § 5313(b)(1); 38 C.F.R. § 3.665(e) (2005).  If the veteran apportions payment to his dependents, unless otherwise provided in the fee agreement, attorney fees "will be determined on the basis of the total amount of the past-due benefits even though a portion of those benefits may have been apportioned to the claimant's or appellant's dependents."  38 C.F.R. § 20.609(h)(3)(ii).  The full amount of payment to the veteran will be resumed upon the veteran's release from incarceration (or assignment to a halfway house or a work-release program).  38 C.F.R. § 3.665(i)(1).

### B.  Statutory and Regulatory Interpretation

We review questions of statutory interpretation de novo.  *DeBeaord v. Principi*, 18 Vet.App. 357, 363 (2004).  In interpreting a statute, the Court examines the statutory structure and specific language of the statute, and "'if the intent of Congress is clear, that is the end of the matter.'" *Cacatian v. West*, 12 Vet.App. 373, 376 (1999) (quoting *Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994)); *see Trilles v. West*, 13 Vet.App. 314, 321 (2000) (en banc). Administrative agencies are authorized to create rules to clarify disparities between statutes.  *See Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002) (citing  *Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.")).  Generally, when Congress leaves "a gap for an agency to fill" or "does not directly address the precise question at issue," this Court must give deference to the Secretary's interpretation of the law.  *Id*. (citing *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc*., 467 U.S. 837, 843 (1984)).

The Secretary is expressly authorized to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws."  38 U.S.C. § 501.  Because substantial deference is given to the Secretary's interpretation of a statute, his interpretation will not be set aside unless it is "arbitrary, capricious, or manifestly contrary to the statute."  *Gallegos*, 283 F.3d at 1312 (noting that, unless the statute speaks "directly" "to the precise question," under *Chevron* deference, "any ensuing [agency] regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance,

or manifestly contrary to the statute" (alteration in original) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001))).

A plain reading of sections 5313 and 5904 of the United States Code and their application to this case demonstrates a disconnect between the two statutes–they are "like two ships passing in the night." *See* Longfellow, *Tales of a Wayside Inn*, pt. 3, "The Theologians Tale."  Standing alone, each statute is clear and unambiguous, and no further interpretation is necessary.  When applied in concert, however, ambiguity is created.  Notably, neither the wording of the statutes nor the legislative history suggests that Congress contemplated a situation, such as this, that would require application of both statutes.  *See Bolton v. Brown*, 8 Vet.App. 185, 192-93 (1995) (Ivers, J., concurring) (discussing legislative history of 38 U.S.C. § 5313); *id.* at 194-97 (Steinberg, J., concurring) (same).  Specifically, section 5313 does not define "compensation" or relate that term to "past-due benefits awarded," and a plain reading of the statutes does not indicate whether the "award" is the amount of money owed prior to, or after, statutorily required deductions.  The Secretary has the authority to promulgate regulations to resolve this ambiguity and fill the gap created between the statutes.  *See* 38 U.S.C. § 501; *see also Chevron*, 467 U.S. at 843-44 (discussing an agency's authority to fill explicit gaps and to provide a reasonable interpretation of implicit gaps left by Congress).  The scope of judicial review of those regulations is limited–"we must decide '(1) whether the statute unambiguously forbids the Agency's interpretation, and, if not, (2) whether the interpretation for other reasons, exceeds the bounds of the permissible.'" *Terry v. Principi*, 340 F.3d 1378, 1383 (Fed. Cir. 2003) (quoting *Barnhart v. Walton*, 535 U.S. 212, 218 (2002)).

C.  The Agency's Interpretation is Consistent with the Statutes

*1.  An award of past-due benefits contemplates a resulting payment to the veteran.*

The statutes in question do not define the term "past-due benefits awarded." *See* 38 U.S.C. §§ 5313, 5904.  Our analysis, however, is guided by 38 C.F.R. § 20.609; that regulation includes in its definition of "past-due benefits" "the lump sum payment which represents the total amount of recurring *cash payments* which accrued between the effective date of the award . . . and the date of the grant of the benefit." 38 C.F.R. § 20.609(h)(3) (emphasis added).  The regulation reiterates that the sum of past-due benefits "will equal the *payments* accruing from the effective date of the award to the date of the initial disability rating decision." 38 C.F.R. § 20.609(h)(3)(i) (emphasis added).

The regulation contemplates "payments" made rather than an abstract entitlement to an award, lending support to the Board's finding that the "attorney fees awarded" should be calculated based upon the actual monetary payment made. *See id*; *see also* BLACK'S LAW DICTIONARY 1150 (7th ed. 1999) ("Payment" is the "[p]erformance of an obligation, usu[ally] by the delivery of money.")

Further, it is axiomatic that "past-due benefits" are those benefits that were owed to the veteran from VA over a period of time, but were not paid. Accordingly, § 20.609(h)(3) instructs that "[t]he sum [of past-due benefits] will equal the payments accruing from the effective date of the award of service connection to the date of the initial disability rating decision." 38 C.F.R. § 20.609(h)(3). Here, the veteran was continuously incarcerated from the effective date of the award to the initial disability rating decision; as such, the "payments" that would have been paid to him over that period, pursuant to statute, could not have exceeded compensation equivalent to a 10% rating. *See* 38 U.S.C. § 5313(a)(1), (a)(1)(A); 38 U.S.C. § 1114(a). In other words, the sum of "past-due benefits" is wholly dependent on the amount of what would have been the payment made during the relevant period of time and, consequently, an award of past-due benefits cannot, by definition, exceed that amount.

### 2. Attorney fees are based on the actual payment to the claimant.

Section 20.609(h)(1) specifies three predicate conditions that must be met before VA will honor an attorney fee agreement. One of those conditions mandates that an award of past-due benefits must "result in a cash payment to a claimant." 38 C.F.R. § 20.609(h)(1)(iii). Most instructive here is the regulation's recognition that an "award" will not necessarily result in a cash payment to a claimant; thus, where there is no payment to the claimant, despite a successful "award on the basis of a claim," VA would not pay the attorney fee. 38 C.F.R. § 20.609(h)(1)(iii) ("An award of past-due benefits will not always result in a cash payment to a claimant or an appellant. For example, no cash payment will be made to military retirees unless there is a corresponding waiver of retirement pay."). In instances where the veteran received no payment, even though there was an "award," there is no award from which VA could withhold and pay a fee directly to an attorney. Therefore, the attorney would not be paid from VA because he or she would have failed to meet all three requirements for a fee agreement to be honored. *See* 38 C.F.R. § 20.609(h)(1). As

clarified in this subsection, recovery for representation must be based upon a veteran's actual receipt of a monetary payment and not simply an adjudication of entitlement.

Also, VA regulation 38 C.F.R. § 20.609(h)(3)(ii) specifically provides the amount of attorney fees that may be awarded when an award is apportioned. An incarcerated veteran may apportion to his or her dependents some or all of the money withheld from the veteran under section 5313. 38 U.S.C. § 5313(b)(1); 38 C.F.R. § 3.665(e). If the veteran elects apportionment, the regulation provides that attorney fees "will be determined on the basis of the *total amount* of the past-due benefits even though a portion of those benefits may have been apportioned to the claimant's or appellant's dependents." 38 C.F.R. § 20.609(h)(3)(ii) (emphasis added). If, as Mr. Snyder suggests, attorneys were to receive their fees based upon the total amount of past-due benefits awarded in all cases, there would be no need for this regulation. Because apportionment is specifically contemplated by the regulations and, in that instance attorney fees are calculated based on the total amount paid and apportioned, by implication, if there is no apportionment, the attorney fees are based only on the reduced amount.

The gap between sections 5313 and 5904 implicitly created by Congress required the Secretary to determine whether attorney fees would be calculated before or after statutory deductions were made following a disability award. The foregoing analysis leads us to conclude that the Secretary filled that gap by creating a regulation that reasonably resolved the issue: it is the end result–the "payment" to the claimant–that is controlling. The Secretary's regulation is not contrary to the statutes. When the three predicate conditions are met, VA will calculate attorney fees based on the amount that is to be paid to the veteran after all statutorily mandated deductions have been made. Having determined that the regulation compels such a result, we now determine whether "th[at] interpretation for other reasons, exceeds the bounds of the permissible." *See Terry,* 340 F.3d at 1383.

### D. The Agency's Interpretation is Reasonable

To determine whether the Secretary's interpretation "exceeds the bounds of the permissible," we will examine its implications for the public and on attorneys. First, we note that, to be honored by VA, pursuant to 38 U.S.C. § 5904(d)(1), "the total fee payable to the attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim." Thus,

20 percent of the total amount of past-due benefits awarded is the outer limit of the award; the total fee withheld and payable by VA simply cannot exceed that amount. *See In the Matter of the Fee Agreement of Mason*, 13 Vet.App. 79, 86 (1996).

Mr. Snyder considers the Board's interpretation an "ambush." We do not agree. Mr. Snyder entered into the fee agreement with the veteran while the veteran was incarcerated. Mr. Snyder should have been aware that the amount of any compensation paid to the veteran would be determined in accordance with section 5313. That statute provides that some or all of the money withheld from the veteran could be apportioned to the veteran's dependents. 38 U.S.C. § 5313. The statute, in concert with the regulations, particularly § 20.609, placed Mr. Snyder on notice that, if the veteran did not elect to apportion part of the money withheld to his dependents, the attorney would be paid based only on the total amount of money paid to the veteran. *See* 38 C.F.R. § 20.609(h)(3)(ii).

Mr. Snyder contends that the section 5313 reduction of the award is a punitive measure aimed only at the veteran, and not the attorney. Relying on his interpretation of the statute and regulations, Mr. Snyder maintains that he should be awarded a total of approximately $18,204.46, when the veteran himself received only $9,102.23. The regulations specify that in order for the fee agreement to be honored, the claim must result in "a cash payment to a claimant or an appellant *from which the fee may be deducted*." 38 C.F.R. § 20.609(h)(3)(iii) (emphasis added). Mr. Snyder's interpretation of this regulation would require VA to calculate the attorney fee based on the pre-reduction amount of past-due benefits, with the result being that all of the veteran's actual past-due benefits would go to the attorney, and even then, a shortfall would be created. We conclude, therefore, that the Secretary's regulation requiring an attorney fee award to be based on the payments that the veteran *will actually receive* does not exceed the bounds of the permissible, and the Court thus holds that the Board did not err in its calculation of attorney fees owed to Mr. Snyder.

E. Statement of Reasons or Bases

The Board is required to consider all evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also

10

required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

Here, the Secretary contends that this case should be remanded because the Board failed to provide adequate reasons or bases for its decision. Notably, this is not a contention of error raised by Mr. Snyder. Although the Secretary argues that further development is necessary to determine whether any of the veteran's award was apportioned to his dependents, the record contains no evidence of apportionment, and Mr. Snyder acknowledged during oral arguments that there was no apportionment. Additionally, the appellant does not allege that he cannot understand the basis of the Board's decision. We find the Board's decision sufficient to facilitate informed review and the reasoning provided by the Board adequate; accordingly, the Secretary's argument in this regard is rejected. *See Kay v. Principi*, 16 Vet.App. 529, 532 (2002) (citing *Allday, supra*).

### F. Implied-in-Fact Contract

Mr. Snyder argues that the plain language of section 5904 obligates VA to pay him directly from past-due benefits awarded on the basis of the claim, contending for the first time during oral argument that section 5904 creates an implied-in-fact contract between an attorney and VA. However, this argument has been expressly rejected by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). *See Hanlin v. U.S.*, 316 F.3d 1325 (Fed. Cir. 2003). In *Hanlin*, a veteran's attorney and his client entered into a fee agreement that provided that the attorney fees would be paid directly from VA to the attorney based on the past-due benefits awarded to the veteran. *Id*. at 1326. The veteran was awarded benefits, but VA erroneously paid the entire sum to the veteran. *Id*. at 1327. The attorney argued that section 5904(d) and § 20.609(h) created an implied-in-fact contract between himself and VA. *Id.* at 1328. In rejecting the attorney's theory, the Federal Circuit noted that, among other things, there was no "mutuality of intent and offer and acceptance" between the attorney and the Government. As to the role of section 5904(d) and § 20.609(h), the court concluded that "[t]he statute and the regulation set forth [ ]VA's authority and obligation to act, rather than a promissory undertaking to the attorney by [ ]VA." *Id*. Therefore, although the Government will

11

withhold fees and pay an attorney when appropriate, the terms of the fee agreement executed between an attorney and a veteran cannot obligate VA to pay a particular fee when VA is precluded by statute or regulation from doing so.

## IV.  CONCLUSION

Based on the foregoing, the Court holds that Mr. Snyder has not demonstrated that the Board committed either legal or factual error that would warrant reversal of the Board decision or remand of his attorney-fees claim.

AFFIRMED.