# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3293

DOUGLAS J. ROSINSKI, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 17, 2019                                   Decided January 30, 2020)

*Douglas J. Rosinski, pro se.*

*Nathan Paul Kirschner*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Carolyn F. Washington*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge,* and MEREDITH and TOTH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. MEREDITH, *Judge*, filed a dissenting opinion.

TOTH, *Judge*: This appeal requires the Court to revisit a question that it has examined in various contexts: whether VA is obligated to pay fees to an attorney (or non-attorney agent) who obtains an award of past-due benefits on behalf of a VA claimant who is otherwise limited under a separate law from receiving such benefits. The constant throughout these cases, discussed at length later, is 38 U.S.C. § 5904. It instructs VA, in cases where a fee agreement specifies direct payment by the Secretary to an attorney for representation before VA, to pay the attorney up to "20 percent of the total amount of any past-due benefits awarded on the basis of the claim." § 5904(d)(1). The variable here is 38 U.S.C. § 5304, which, operating in tandem with 10 U.S.C. § 1414, prohibits veterans who receive military retirement pay from also receiving disability compensation from VA unless the veteran either obtains a disability rating of *50 percent* or greater or has *waived* military retirement pay.

The discrete question is whether section 5904 requires VA to pay fees to an attorney who obtains a disability rating of less than 50 percent for a veteran receiving military retirement pay—or, whether section 5304 forecloses such payments to attorneys. In *Snyder v. Nicholson*, 489 F.3d

1213 (Fed. Cir. 2007), the Federal Circuit held that 38 U.S.C. § 5313, a statutory limitation on payments to incarcerated veterans, did not alter VA's obligation to pay attorneys fees under section 5904(d)(1) because section 5313 did not purport to change the monthly compensation awarded on the basis of the veteran's claim but merely served as a withholding device for full payment of benefits otherwise lawfully established. Because *Snyder*'s reasoning—as explained in subsequent cases—applies equally to section 5304, the Court reverses the Board's ruling and directs the Secretary to pay Mr. Rosinski the fees to which he is entitled under section 5904(d)(1).

## I. BACKGROUND

The record presents a meandering procedural history involving several rulings from VA on both the veteran's disability claim as well as appellant Douglas Rosinski's derivative claim for payment of the 20 percent portion of past due benefits. (For simplicity, we'll refer to this payment as "attorneys fees" with the caution that our use of the term does not also refer to fees made to an attorney under separate provisions of law such as the Equal Access to Justice Act.) Although the focus ultimately centers on the attorneys fees, it's the sequence of rulings on the veteran's disability claim that serves as a catalyst for the derivative attorneys fees claim. We thus summarize these to the extent necessary to understand the respective rulings on Mr. Rosinksi's claim for attorneys fees.

Christopher Grall, a Coast Guard veteran, was receiving military retirement pay when he filed a claim for VA disability benefits for migraine headaches. He entered into a standard contingency fee agreement with attorney Douglas Rosinski to represent him before VA, whereby Mr. Rosinski would be paid directly by the Secretary 20 percent of any past-due benefits awarded on the basis of Mr. Grall's claim. Past-due benefits are generated when an initial (or increased) rating is awarded with a retroactive effective date and normally result in a lump sum payment to the veteran. When the veteran faces an impediment to payment following the award of a rating, past-due benefits comprise the total amount of benefits that are "unpaid" to the claimant due to the impediment. *Gumpenberger v. Wilkie*, 31 Vet.App. 33, 37 (2019).

On December 13, 2013, the VA regional office (RO) granted a 30 percent evaluation for Mr. Grall's service-connected migraine headaches, effective May 10, 2011. This rating brought Mr. Grall's combined disability rating to 40 percent. However, because Mr. Grall had been in receipt of military retirement pay during the relevant period, VA informed him that the agency was withholding past-due benefits because he had not yet waived his military retirement pay and

2

did not obtain a rating of 50 percent or greater. For these reasons, VA ruled that it was prohibited under section 5304 from paying him the past-due benefits.

In connection with that ruling, VA issued a separate decision denying Mr. Rosinski attorneys fees because the increased evaluation did not result in any retroactive payment to the veteran. Mr. Rosinski filed a Notice of Disagreement (NOD) challenging the attorneys fees decision. VA issued a Statement of the Case (SOC) in January 2015, and Mr. Rosinski appealed the decision to the Board in February 2015.

While Mr. Rosinski's appeal of the denial of attorneys fees was pending, VA on June 2, 2015, increased Mr. Grall's disability rating for migraine headaches to 50 percent, effective May 10, 2011. This ruling brought Mr. Grall's combined rating to 60 percent; and because he cleared the 50 percent threshold spelled out by sections 5304 and 1414, VA awarded the veteran past-due benefits. In addition to awarding benefits to Mr. Grall, the RO also found that Mr. Rosinski was entitled to attorneys fees in the amount of $3,549. This amount reflected the fee for Mr. Rosinski's efforts in increasing Mr. Grall's evaluation from 30% to 50% for the period of May 10, 2011, until June 2, 2015.

The payment of attorneys fees didn't settle the matter; it merely shifted the terms of the dispute, as Mr. Rosinski now challenged the methodology under which VA tabulated the respective awards. Those tabulations run roughly as follows: Once Mr. Grall was awarded a 60 percent disability rating with an effective date of May 10, 2011, he became eligible for a total amount of back pay of $32,499. VA ruled, however, that because Mr. Grall had received military retirement pay in the amount of $14,745 during that time, those benefits were not owed to the veteran because they had already been paid out. R at 372, 387. Instead, VA paid Mr. Grall $17,754, which represented the difference in these amounts—$32,499 less $14,745 that Mr. Grall had received in military retirement pay. Likewise, VA calculated Mr. Rosinski's attorneys fees at 20 percent of the reduced amount paid to Mr. Grall after discounting the retirement pay. After the dust settled, Mr. Rosinski claimed that he should have been paid 20 percent of $32,499 (the total award), rather than 20 percent of $17,754 (the reduced amount).

In January 2016, the Board denied Mr. Rosinski's appeal of the original RO decision. It found the matter to be moot because Mr. Rosinski was paid $3,549 in attorneys fees and so there was no longer a case or controversy.

Mr. Rosinski appealed to this Court, which vacated the Board's decision because the Board provided an inadequate statement of reasons or bases for finding that the June 2015 RO decision rendered moot the appeal of the January 2015 decision.

On September 18, 2017, the Board affirmed the payment of $3,549 in attorneys fees. It ruled that VA paid all past-due benefits owed to Mr. Grall when it paid him $17,745 and that no other retroactive benefits were due to the veteran. For this reason, there was no basis for eligibility for payment of additional attorneys fees related to the claim. The Board based this ruling on the grounds that section 5904 did not "authorize VA to pay attorneys fees 'as if' a veterans claim resulted in an award of retroactive VA benefits payments where a veteran does not, in fact, receive a retroactive payment of VA benefits." R. at 13. The Board also distinguished this situation from that of *Snyder*, as that case involved a withholding of benefits from an incarcerated veteran who was otherwise entitled to such benefits; by contrast, this situation differed because Mr. Grall was not entitled to a cash payment of benefits under section 5304. Additionally, the Board ruled that VA was prevented from paying attorneys fees under its own regulation, 38 C.F.R. § 14.636(h)(1), which establishes that no cash payment will be made to veterans unless there is a corresponding waiver in retirement pay. The Board thus denied Mr. Rosinski's appeal.

## II. ANALYSIS

This case marks the fourth in a line of attorneys fees decisions examining VA's obligations to pay attorneys fees under section 5904. The first and most significant of these cases is *Snyder*, in which the Federal Circuit defined various terms within section 5904 and examined whether VA's obligation to pay attorneys fees was countermanded by a separate statute, section 5313, which limited the monthly compensation payments that an incarcerated veteran could receive on a successful claim. 489 F.3d 1213. The next two decisions, *Jackson v. McDonald*, 635 F.App'x 858 (Fed. Cir. 2015), and *Gumpenberger v. Wilkie*, 31 Vet.App. 33 (2019), refined *Snyder*'s interpretation of section 5904 and applied it to other scenarios.

Framed in the most general terms, the question on appeal is whether *Snyder*'s reasoning applies equally to section 5304 and obligates VA to pay attorneys fees even where the veteran receives a rating below fifty percent and hasn't waived retirement pay. Insofar as this question involves interpretation of section 5904, our task is made easier by the fact that *Snyder* already set out what various terms mean, with *Jackson* and *Gumpenberger* providing an assist. The more

4

difficult part of our analysis arises when we analyze section 5304 to see if it presents a similar type of limitation of payment as section 5313, which *Snyder* regarded as a withholding device that did not alter VA's obligations under section 5904. We thus first analyze section 5904 as interpreted and applied by the triumvirate of *Snyder*, *Jackson*, and *Gumpenberger* before turning to the two relevant statutes at issue: sections 5304 and 1414.

## A. 38 U.S.C. § 5904(c) and (d)

Congress passed section 5904 to establish a framework for attorneys to represent benefits claimants on a contingent basis in proceedings before VA. To that end, it limits when an attorney can begin charging a client for representation, caps the fee the Secretary must pay at 20 percent of the amount of past-due benefits awarded, and states the allowable bases for such fees. § 5904(c), (d)(1)-(3). It also permits a fee agreement to specify that the fee "is to be paid to the agent or attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim." § 5904(d)(2)(A)(i). When there is such an agreement, "[t]o the extent that past-due benefits are awarded in any proceeding . . . the Secretary may direct that payment of any fee to an agent or attorney . . . be made out of such past-due benefits." § 5904(d)(3).

Additionally, VA has promulgated regulations interpreting its obligations under section 5904. Specifically, 38 C.F.R. § 14.636(h) lists a series of conditions that must be met before VA will "honor" a fee agreement. One of those conditions is relevant here and provides that the award of past-due benefits must result in a "cash payment to a claimant or an appellant from which the fee may be deducted." § 14.636(h)(iii).

### 1. Snyder

In *Snyder*, the Federal Circuit examined the language of section 5904 directing VA to pay attorneys fees "from any past-due benefits awarded on the basis of the claim." § 5904(d)(2)(A)(i). There, the court addressed whether section 5904 mandated payment to an attorney who successfully obtained a 70 percent rating for PTSD for an incarcerated veteran that was effective retroactive seven years. 489 F.3d 1213. The complication in that case was that a separate statute, 38 U.S.C. § 5313(a)(1), caps the rate of disability compensation payable to an incarcerated veteran at 10 percent of the amount the veteran would otherwise be entitled to, with the remainder withheld under the terms of the statute. The attorney sought a fee of 20 percent of the past-due benefits irrespective of the withholding, whereas VA paid the attorney 20 percent of the *reduced* award— that is, 20 percent of the 10 percent actually received by the veteran—once section 5313(a)(1)'s

5

withholding was applied. On appeal, this Court affirmed the Board's ruling that the attorney was only entitled to 20 percent of the amount payable to the veteran after the withholding had been applied.

The Federal Circuit reversed, holding that the language of section 5904(d)(1) was unambiguous as to the meaning of "the total amount of any past-due benefits awarded on the basis of the claim." *Snyder*, 489 F.3d at 1217. Significantly, the Federal Circuit singled out various terms within the phrase and noted that they provided a "clear answer" to how they applied in the context of disability compensation. *Id*. at 1218. First, the court identified that a "claimant's service-connected disability forms the 'basis' of his or her claim for compensation." *Id*. (citing 38 U.S.C. § 1110). Next, the Court explained that VA makes an *award on the basis of the claim* when it assigns a disability rating to the claimant by determining average impairments of earning capacity in civil occupations resulting from the claimant's injuries. *Id*. (citing 38 U.S.C. § 1155). Following this line, it deemed a "past-due benefit" to be any "compensation not paid to the claimant in a given month." *Id*. Finally, *Snyder* held that the "'total amount of any past-due benefits awarded on the basis of the claim' is the sum of each month's unpaid compensation—as determined by the claimant's disability rating—beginning on the effective date and continuing through the date of the award." *Id*.

*Snyder* then turned to section 5313 and noted that the limitation on payments to incarcerated veterans did not purport to change the monthly compensation awarded on the basis of the claim, but merely directed that a certain amount of such compensation be withheld. *Id*. (citing 38 U.S.C. § 5313(a)(1)). The Court likened the difference between *awarded* compensation and *payable* compensation to that of *gross* and *net* salary and noted that the statutes offered no reason why the definition of past-due benefits should "change from time to time even with regard to the same veteran." *Id*.

Weaving all this together, *Snyder* ruled that this Court erred when it "focused on the term 'past-due benefits' without sufficient emphasis on the world 'awarded' as it appears in section 5904." *Id*. at 1219. The court reasoned that, because section 5313 does not restate the award of past-due benefits, it functions as a withholding device ensuring that veterans who are incarcerated for a felony conviction do not receive greater cash payments than would be attributed to disability ratings greater than 10 percent. Based on this reasoning, the Federal Circuit remanded with

6

instructions for VA to calculate attorneys fees based on the initial award of the 70 percent disability rating the veteran received prior to the withholding.

## 2. *Jackson*

The Federal Circuit next had occasion to analyze section 5904 in *Jackson*. Although unpublished, *Jackson* provides useful insights into how *Snyder*'s reasoning bears on other situations. In that case, an attorney successfully represented a veteran before VA on a claim for service connection related to orthopedic disabilities; however, the veteran died before he received payment and no substitute had been appointed at the time the attorney sought to recover his 20 percent contingency fee from VA under section 5904.

VA denied attorneys fees on the grounds that past-due benefits could only be paid as accrued benefits where the beneficiary to such "has signed a fee agreement" with the attorney seeking the fee payment. *Jackson*, 635 F.App'x at 860. On appeal, this Court upheld the denial of attorneys fees, concluding that VA never awarded the deceased veteran any past-due benefits on the basis of his claim within the meaning of section 5904. It also ruled that any subsequent grant of accrued benefits to the veteran's surviving spouse did not implicitly constitute an award to the veteran on the basis of his original claim for benefits under section 5904.

The Federal Circuit began its discussion by noting that *Snyder* determined that an award is not determined by the amount payable (or actually paid) to the veteran but results from the granting of service connection coupled with the assignment of a disability rating and effective date. *Id*. at 861. The award of past-due benefits thus occurs when VA completes the "non-mechanical judgments" of assigning a disability rating and an effective date and that nothing in the language of section 5904 requires that the decision awarding benefits be communicated to the veteran or that money actually be paid out. *Id*. at 861–62.

The court then turned to VA's main argument, namely that the agency's own regulations prohibit payment under section 5904 unless the award of past-due benefits on a veteran's claim results in a cash payment to the veteran. *Id*. at 864. Significantly, this is the same grounds the Board cited in denying Mr. Rosinski's claim for attorneys fees in this case. The regulation that existed at the time, 38 C.F.R. § 20.609(h)(3)(i) (2007), is functionally identical to the amended regulation that VA relies on in this case, 38 C.F.R. § 14.636(h)(3)(i). Then, as now, VA regulations established that the "award of past-due benefits results in a cash payment to a claimant or an appellant from which the fee may be deducted." *Id*. at 863. The Federal Circuit, however, rejected

7

VA's arguments because it rested on a view of section 5904 that *Snyder* dismissed as an improper construction of that statute. "The statute does not require payment to the veteran for the fee-supporting benefit award to exist. The statute thus supplies no reason to give the current regulation a reading contrary to the straightforward meaning of its terms." *Id*. at 864. For these reasons, the Federal Circuit reversed this Court's decision affirming VA's ruling that the attorney was not entitled to fees for his representation of the since-deceased veteran.

### 3. *Gumpenberger*

This Court revisited section 5904 in *Gumpenberger v. Wilkie*, 31 Vet.App. 33 (2019). Once again, the parties disputed the meaning of the phrase "total amount of any past-due benefits awarded on the basis of the claim" as spelled out by section 5904. In that case, VA had discontinued payment, retroactive several years to the date of service connection, on the grounds that the veteran was a fugitive felon and thus prohibited from receiving disability payments under 38 U.S.C. § 5313(b)(3).

Mr. Gumpenberger successfully represented the veteran such that the Board issued a decision invalidating the entire debt against the veteran. At the time of the Board decision, VA had recouped from the veteran more than $65,000 out of a potential net entitlement of upwards of $199,000. Having entered into a standard contingency fee agreement with the veteran, Mr. Gumpenberger challenged a VA decision paying him 20 percent of the $65,000 that had been erroneously collected from the veteran rather than 20 percent of the full amount of the debt invalidated—$199,000.

The specific question in *Gumpenberger* was whether the phrase "total amount of any past-due benefits awarded on the basis of the claim" in section 5904(d) encompassed non-cash benefits such as the invalidation of a debt in whole or whether it was limited to the amount that was erroneously recouped from the veteran. Our opinion followed *Snyder*'s interpretations in whole, noting that an "award" is "the amount stated as the award for success in pursuit of a claim for benefits" and that "to make an 'award[]' on the 'basis' of that claim, [] VA must assign a disability rating." *Gumpenberger*, 31 Vet.App. at 37 (citing *Snyder*, 489 F.3d at 1218–19). Ultimately, our focus centered on *Snyder*'s interpretation of what constituted a "past-due benefit," namely, that the Federal Circuit equated past-due with *unpaid* benefits, such that "for there to be payment of attorney fees out of past-due benefits awarded on the basis of the claim, there must first be an

award of past-due benefits that were unpaid or owed to the claimant from which those fees could be paid." *Id*.

We then considered the Federal Circuit's decision in *Jackson* and noted that VA awarded past-due benefits when it "completed the 'non-mechanical judgments' of assigning evaluations and effective dates" for the veteran's disabilities. *Id*. Significantly, we recognized that *Jackson* held that money need not have actually been paid to a claimant to constitute an "award" of past-due benefits provided that there was an award of benefits that were, in fact, past due. *Id*. at 38.

We held that *Snyder* and *Jackson* demonstrated that for the purposes of determining an attorney's fee under a direct-fee pay agreement, the "total amount of past-due benefits awarded on the basis of the claim" does not depend on the amount ultimately payable to the claimant but is determined by VA "when the claim is granted and is not affected by an impediment to payment like the statutory bar in *Snyder* or the veteran's death in *Jackson*." *Id*. That notwithstanding, past-due benefits means the "total amount of benefits that were 'unpaid' or owed to the claimant." *Id*. As the $199,000 of compensation benefits had already been paid to Mr. Gumpenberger years before, that amount was not "unpaid benefits" for the purposes of section 5904 at the time the debt was invalidated. Rather, only the benefits that were erroneously recouped by VA—$65,000— qualified as "unpaid."

### B. 38 U.S.C. § 5304 and 10 U.S.C. § 1414

Having labored our way through various decisions applying section 5904, we now turn to the salient question of this case: whether section 5304's bar on payment is similar in nature to that of section 5313 such that *Snyder*'s reasoning covers it as well.

As with all cases of statutory construction, we focus on the language of the statute to determine if it has a plain and unambiguous meaning with regard to the particular dispute at issue. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). In making this determination, we look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). If the statutory language is unambiguous and the statutory scheme is "coherent and consistent" then the Court's statutory inquiry comes to an end. *Id*. at 340.

In relevant part, 38 U.S.C. § 5304 reads:

(a)(1) Except as provided in section 1414 of title 10 or to the extent that retirement pay is waived under other provisions of law, not more than one award of pension, compensation, emergency officers', regular, or reserve retirement pay, or initial

9

award of naval pension granted after July 13, 1943, shall be made concurrently to any person based on such person's own service or concurrently to any person based on the service of any other person.

Section 5304 begins by laying down two express exceptions to the prohibition against receiving both military retirement pay and an award of disability compensation. The *first* exception takes form in the opening words: "Except as provided in section 1414 of title 10" and establishes by virtue of its placement at the beginning of the provision that the whole of section 5304 is subject to any countervailing language within section 1414. The *second* exception immediately follows and provides that section 5304's prohibition also does not apply "to the extent that retirement pay is waived under other provisions of law."

The dispute here centers on the first exception spelled out in 10 U.S.C. § 1414(a)(1), which provides, in relevant part, that a veteran "who is entitled for any month to retired pay and who is also entitled for that month to veterans' disability compensation for a qualifying service-connected disability . . . is entitled to be paid both for that month without regard to sections 5304 and 5305 of title 38." Further, section 1414(a)(2) provides a definition for "qualifying service-connected disability" by noting that the term "means a service-connected disability or combination of service-connected disabilities that is *rated* as not less than 50 percent disabling by the Secretary of Veterans Affairs." Read together, sections 5304 and 1414 establish that a veteran who obtains a disability rating of 50 percent or greater has a *qualifying service-connected disability* and thus is not subject to 5304's prohibition against receiving both retirement pay and disability compensation and need not waive the former.

Notably, section 1414's exception stands alongside 5304's language noting that "not more than one award of pension, compensation . . . shall be made concurrently . . ." to veterans. 38 U.S.C. § 5304(a)(1). Recall that in *Snyder* the Federal Circuit explained that VA makes an *award on the basis of the claim* when it assigns a disability rating to the claimant by determining average impairments of earning capacity in civil occupations resulting from the claimant's injuries. 489 F.3d at 1218 (citing 38 U.S.C. § 1155). *Jackson* later refined this formulation to note that an award of past-due benefits occurs when VA completes the "non-mechanical judgments" of assigning a disability rating and effective date. 635 F.App'x at 861–62. In light of this interpretation, one might be tempted to read section 5304's directive that "not more than one award . . . shall be made concurrently" as prohibiting VA from even *assigning* a disability rating and effective date (that is,

making an "award" of benefits) to veterans who have not waived retirement pay. But this reading is untenable because the only way that the exception spelled out in section 1414 applies is if the veteran achieves a rating of 50 percent or greater. VA must make an "award" of benefits in the form of assigning a rating as a predicate act to determine whether section 1414 even applies. "[W]henever a power is given by a statute, everything necessary to making it effectual or requisite to attaining the end is implied." James Kent, Commentaries on American Law, 464 (Charles M. Barnes ed., 13th ed. 1884).

The interplay between sections 5304 and 1414 comes into sharper focus when one considers section 1414's repeated use of the word "entitled." Specifically, section 1414 establishes that a veteran "who is *entitled* for any month to retired pay and who is also *entitled* for that month to veterans' disability compensation for a qualifying service-connected disability . . . is *entitled* to be paid both for that month without regard to sections 5304 and 5305 of title 38." 10 U.S.C. § 1414(a)(1) (emphasis added). Black's Law Dictionary defines "entitle" as: "To grant a legal right to or qualify for." BLACK'S LAW DICTIONARY 612 (9th ed. 2009). It further defines "entitlement" as: "An absolute right to a (usu. monetary) benefit, such as social security, granted immediately upon meeting a legal requirement." *Id*. Significantly, this definition is consistent with the Federal Circuit's treatment of the term in *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009), which noted that a veteran "is entitled to disability benefits upon a showing that he meets the eligibility requirements set forth in the governing statutes and regulations."

Section 1414 thus recognizes that it applies to any veteran who is "entitled" to retirement pay and is "also entitled for that month to veterans' disability compensation for a qualifying service-connected disability." The shift in focus from *entitlement* to *qualifying service-connected disability* is significant; it establishes that to receive benefits under section 1414, the veteran's entitlement must be to a specific class of benefits relating to a "qualifying service-connected disability," which section 1414(a)(2) identifies as a rating of 50 percent or greater. By shifting the focus from general entitlement to disability benefits to entitlement to a narrower class of benefits (50 percent or greater), section 1414 operates as an exception to the prohibition against the receipt of benefits (rather than the award of benefits) once a veteran achieves a rating of 50 percent. Thus, veterans who obtain a 10 percent rating may be "entitled" to benefits insofar as they have met all the relevant criteria to establish eligibility, but still do not qualify for section 1414's exception because they have not demonstrated entitlement to a "qualifying service-connected disability" and

11

so are not "entitled to be paid" for such benefits. In such cases, section 5304's prohibition still applies, even though the veteran has otherwise established entitlement to benefits. The operative distinction is between entitlement to benefits generally and entitlement to *payment* for benefits; section 1414 provides that veterans who achieve an award of 50 percent or greater are "entitled to be paid" for such benefits.

Section 5304 thus operates much in the same manner as section 5313's restrictions on payment to incarcerated veterans. In *Snyder*, the Federal Circuit identified the operative distinction as that between the amount "awarded" to a veteran and the amount "actually payable." 489 F.3d at 1219. Section 5313's limitations of payments did not purport to change the amount of monthly compensation *awarded* on the basis of a claim but merely directed that a certain amount be withheld. In the exact same fashion, section 1414's restrictions likewise did not alter the amount of compensation awarded, but merely establish that no such award will be paid at all unless it falls within the class recognized as a "qualifying service-connected disability." In this vein, *Snyder* noted that even if an incarcerated veteran received an increased rating while incarcerated, "he would see no increase in his payable benefits while he remains incarcerated, but he would nevertheless have been 'awarded' increased compensation for the purposes of VA regulations." *Id*.

The same applies to section 5304. A veteran receiving military retirement pay whose rating is increased from 10 percent to 30 percent has been awarded an increased rating but cannot receive any payment for such rating. In this light, section 5304 functions more accurately as a total withholding on payment that functions comparably to section 5313's limitation on payments to benefits to which a veteran is otherwise "entitled."

It is a fundamental canon of statutory construction that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nielson v. Shinseki*, 607 F.3d 802, 807 (Fed. Cir. 2010). A court must therefore interpret a statute "as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into a harmonious whole." *Id*. (internal quotes omitted). Reading sections 5304 and 1414 as a harmonious unit, it becomes clear that the Secretary must first render an award of benefits—that is, assign a rating and effective date—before determining whether section 1414's exception applies for veterans with ratings of 50 percent or greater. In cases where a veteran obtains an award of less than 50 percent, section 5304 thus operates as a withholding device—albeit a complete withholding—that functions in like manner to section 5313's limitation on payments to incarcerated veterans. To read these statutes

differently would require us to treat the term "award" as representing the amount payable to the veteran—a reading that directly contradicts the Federal Circuit's interpretation in *Snyder*.

Contrary to our dissenting colleague's contention, *see post* at 21-22, our reading of these statutes is consistent with *Gumpenberger*. In *Gumpenberger*, the Court held that attorney fees must be calculated from the total amount of past-due benefits awarded on the basis of the claim, notwithstanding any statutory impediment to payment. 31 Vet.App. at 38. Here, the grant of an increased rating resulted in retroactive disability compensation that was owed and unpaid to Mr. Grall—i.e., a past-due benefit—that VA would have been obligated to pay him but for section 5304. Construing section 5304 as a withholding device in this manner is not only consistent with *Snyder*, 489 F.3d at 1219-20, but also gives due meaning to the terms "awarded" and "past-due benefits" in section 5904(d) as required by *Gumpenberger*, 31 Vet.App. at 39. The critical distinction between this case and *Gumpenberger* is that, here, there was a past-due benefit awarded—unpaid but unpayable retroactive disability compensation—whereas in *Gumpenberger*, invalidation of the overpayment debt did not result in a past-due benefit that was unpaid and owed to the veteran in that amount.

### C.  Interpretation of 38 U.S.C. § 5904

We turn, at last, to the Board's decision. As noted earlier, the Board ruled that VA paid all past-due benefits owed to Mr. Grall when it paid him $17,745 and that there was no basis for eligibility for payment of additional attorneys fees related to the claim. The Board based this ruling on the grounds that section 5904 did not "authorize VA to pay attorneys fees 'as if' a veteran's claim resulted in an award of retroactive VA benefits payments where a veteran does not, in fact, receive a retroactive payment of VA benefits." R. at 13. The Board distinguished this situation from that of *Snyder*, as that case involved a withholding of benefits from an incarcerated veteran who was otherwise entitled to such benefits; by contrast, this situation differed because Mr. Grall was not entitled to a cash payment of benefits under section 5304. Additionally, the Board ruled that VA was prevented from paying attorneys fees under its own regulation, § 14.636(h)(1), which establishes that no cash payment will be made to veterans unless there is a corresponding waiver in retirement pay.

The interpretation of a statute or regulation is a legal question and so we review the Board's interpretations de novo without any deference. *Lynch v. Wilkie*, 30 Vet.App. 296, 301 (2018). The Board grounded its ruling in a reading of section 5904 that cannot be squared with *Snyder*.

Specifically, the Board ruled that section 5904 did not authorize VA to pay attorneys fees *as if* the veteran's claim "resulted in an award of retroactive VA benefits payments where a veteran does not, in fact, receive a retroactive payment of VA benefits." R. at 13.

There are two problems with this interpretation. The first is the misunderstanding of what it means when VA *awards* benefits: *Snyder* and *Jackson* make clear that the award of benefits occur when VA assigns a disability rating and an effective date. Here, VA rendered an award to Mr. Grall when it assigned him a rating of 30 percent and an effective date of May 10, 2011. VA later issued an additional award when it increased Mr. Grall's rating for migraine headaches from 30 to 50 percent, thus rendering him eligible to receive payment under section 5304. In both instances, VA granted the award when it completed the non-mechanical judgments of assigning a rating and effective date. *Gumpemberger*, 31 Vet.App. at 37. By contrast, the Board's use of counterfactual language "as if" suggests that no actual award of retroactive benefits occurred. This was an error. *Snyder* and the following cases are unequivocal that an award occurs with the assignment of a rating and an effective date.[1]

The second error is a variant of the first. Specifically, the Board conflated—that is, it treated as having the same legal significance—the amount of payment that a veteran is allowed to receive on a particular claim with the actual award itself. This, in fact, was the error that *Snyder* set about to correct, noting that section 5313 did not restate the actual award of past-due benefits insofar as it did not change the assigned rating or effective date; it merely operated as an extrinsic impediment against a certain class of veterans receiving payment who were incarcerated for felonies. For this reason, section 5313 did not affect VA's obligations under section 5904 because it did not alter the fundamental structure of the award, but only the payment to the particular veteran. Because section 5904 directs payment to the attorney on the basis of the award and not the amount actually received by the veteran, it was unaffected by section 5313.

For the same reason, VA's reading of its own regulation, § 14.636(h)(3)(1), is untenable in light of the Federal Circuit's reading of the plain language of section 5904. VA reads its regulation as forbidding payment under section 5904 unless the award of past-due benefits on a veteran's claim results in a cash payment to the veteran. As discussed, this is the same interpretation that

---

[1] Again, unlike in *Gumpenberger*, the benefit awarded in this case—an increased migraine rating effective prior to the date of decision—included a past-due benefit of retroactive disability compensation that was owed and would have been paid to Mr. Grall if not for section 5304's bar to payment.

the Federal Circuit flatly rejected in *Jackson*. There, VA contended that section 5904 "require[s] that the qualifying award of past-due benefits on a veteran's claim result in a cash payment to the veteran." *Jackson*, 635 F.App'x at 863–64. The Federal Circuit rejected this argument noting that it constituted a "view of the statute that we have rejected as contrary to a proper construction. The statute does not require payment to the veteran for the fee-supporting benefit award to exist. The statute thus supplies no reason to give the current regulation a reading contrary to the straightforward meaning of its terms." *Id*. at 8640.

### D. The Appropriations Clause

The Secretary mounts one final argument that we must address, namely that VA is prohibited by the Appropriations Clause of the Constitution, art. 1, sec. 9, cl. 7, from making such payments under section 5904. Our analysis of this question is squarely covered by our discussion of VA's obligations to pay attorneys as spelled out by the *Snyder* line of cases. In short, *Snyder* puts to rest any notion that VA lacks the statutory authority to pay attorneys on successful claims even where the veteran is barred by a separate provision of law from receiving such payments.

The Appropriations Clause has consistently been construed as prohibiting the payment of money on a claim against the government except as authorized by statute. *See Office of Pers. Mgmt v. Richmond*, 496 U.S. 414, 428–29 (1990). "It means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Id*. at 424. The Appropriations Clause has been interpreted as "a restriction upon the disbursing authority of the Executive department," *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937), insofar as it prevents Executive branch officers from inadvertently obligating the Government to pay money without statutory authority. *See Richmond*, 496 U.S. at 416.

Various federal statutes also reinforce Congress's control over appropriated funds. *See* 31 U.S.C. § 1301 *et. seq*. Section 1301, known as the "Purpose Statute" provides that appropriated funds may be applied only "to the objects for which the appropriations were made." 31 U.S.C. § 1301(a). Section 1341, known as the Anti-Deficiency Act, makes it unlawful for government officials to "make or authorize an expenditure or obligation exceeding an amount available in appropriation" or to involve the Federal Government "in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. § 1341(a)(1)(A)-(B).

Various provisions within Title 38 establish the basic entitlement to disability pay and provides that the United States "will pay" veterans who qualify for such. *See e.g.*, 38 U.S.C. §§ 1110, 1121, 1131, 1141 *et. seq.* Section 501 authorizes the Secretary of Veterans Affairs to establish regulations with respect to the "nature and extent of proof and evidence" required "to establish the right to benefits." 38 U.S.C. § 501(a)(1). Thus, there can be no question that Congress has authorized VA via various statutory provisions to make payments to veterans who have established eligibility for disability compensation. With regard to payments to attorneys, 38 U.S.C. § 5904(d)(1)-(2) obligates the Secretary to pay directly to attorneys or agents who have entered into fee agreements with veterans to represent them before VA up to 20 percent of "any past-due benefits awarded on the basis of the claim." Thus, VA's authority to pay attorneys directly arises under section 5904 but is ultimately tethered to VA's statutory authority to "award" benefits to claimants who establish the conditions for eligibility for such award.

What follows here is largely a restatement of our earlier analysis. *Snyder* established that VA renders an award on a veteran's claim when it completes the non-mechanical judgments of assigning a disability rating and effective date. *Snyder* clearly established that VA's obligations under section 5904 to pay attorneys fees are not affected by additional statutory limitations on a particular veteran's ability to receive payment as those do not affect the amount "awarded on the basis of the claim." VA, for example, may run afoul of the Appropriations Clause if it decided to disregard section 5304 and pay a veteran who hasn't waived retirement pay an award of less than 50 percent. However, the *Snyder* line of cases establishes that VA's obligations to attorneys under section 5904 are to be determined by the amount awarded, not by the amount the veteran is actually entitled to receive. Under such reasoning, payment to attorneys does not fall afoul of the Appropriations Clause even where a separate provision limits payment to the claimant.

### III. CONCLUSION

Accordingly, we REVERSE the Board's ruling, VACATE the September 18, 2017, Board Decision and REMAND the matter for the Secretary to calculate and pay to Mr. Rosinski the correct amount of attorneys fees that he is entitled to under section 5904(d)(1).

MEREDITH, *Judge*, dissenting: Congress mandated that an attorney's direct pay contingency fee is limited to 20% of the total amount of past-due benefits awarded on the basis of the claim. Although the veteran here was statutorily barred from receiving dual compensation and, thus, no past-due benefits were unpaid or owed to him, the majority orders the Secretary to pay the appellant a fee. As explained below, the result of the majority's holding in cases such as this is that the United States (Department of Veterans Affairs) will be required to pay money out of the Treasury, even though no funds have been appropriated for the sole purpose of paying a veteran's attorney. For this reason, I must respectfully dissent.

## I. Background

Relevant to the issue here on appeal, in April 2012, veteran Christopher D. Grall retained the appellant, Douglas J. Rosinski, to represent him in connection with his appeal from a January 2012 rating decision that had granted entitlement to disability compensation for migraine headaches, with a noncompensable rating effective May 10, 2011. Record (R.) at 1188-92, 1211-15. In a December 2013 rating decision, a VA regional office (RO) increased the veteran's initial disability rating to 30%, effective May 10, 2011, bringing his combined rating to 40%. R. at 1092-96. The veteran, however, had been receiving military retirement pay and was ineligible for concurrent receipt of retired pay and VA compensation. R. at 1069-74. Thus, in January 2014, the RO denied direct payment of attorney fees to the appellant because the increased evaluation "did not result in any retroactive payments to the veteran." R. at 1075-76. The appellant perfected an appeal to the Board of Veterans' Appeals (Board), arguing that his 20% contingency fee should be calculated prior to any offset for military retired pay. R. at 670-73, 1085-86.

While his appeal was pending, he continued to represent the veteran, and, in June 2015, the RO increased the veteran's disability rating from 30% to 50%, effective May 10, 2011, bringing his combined rating to 60%. R. at 374-80, 381-84, 449-52. The RO informed the veteran and the appellant that the veteran was entitled to past-due benefits in the amount of $17,745.01 and that 20% ($3,549) would be withheld and paid directly to the appellant. R. at 381-84. The appellant did *not* file a Notice of Disagreement with the manner in which the RO calculated his fee, and, because he had received a 20% fee based on the 2015 rating decision, in January 2016, the Board dismissed his appeal of the January 2014 decision as moot. R. at 211-16. The Court vacated the Board's decision and remanded the matter for further adjudication. R. at 127-29.

In September 2017, the Board issued the decision on appeal, explaining that its decision "is limited in scope to whether the appellant was entitled to attorney fees on the basis of the December 2013 decision . . . and that [it] shall not consider whether the amount of the attorney fees awarded in the separate July 2015 fee determination was proper." R. at 5. The Board then found that, because the veteran was not eligible for concurrent receipt of VA compensation and retired pay for the period between May 2011 and January 2014, the December 2013 award of a 30% disability rating "did not result in a retroactive payment of VA compensation benefits to the [v]eteran." R. at 6. The Board thus concluded that, "[i]n the absence of any retroactive payment from VA to the [v]eteran of past-due VA compensation benefits associated with the award of a 30[%] rating for migraine headaches . . . the criteria for direct payment of attorney fees . . . have not been met." R. at 6.

## II. The Appellant Did Not Contract for a Fee

The majority states that the appellant and the veteran "entered into a standard contingency fee agreement" whereby the appellant "would be paid directly by the Secretary 20[%] of any past-due benefits awarded on the basis of Mr. Grall's claim." *Ante* at 2. Although we are admittedly constrained by 38 U.S.C. §§ 7252 and 7261, and the Board did not explicitly address the validity of the fee agreement, in my view, it is noteworthy that the terms of the fee agreement suggest that the appellant did not contract for a fee under the circumstances surrounding the veteran's December 2013 rating decision. In this regard, the fee agreement provides in part:

> 4. FEES AND COSTS
>
> A. This is a Contingent Fee case. Client agrees to pay a fee equal to <u>twenty percent (20%)</u> of the total amount of any *funds recovered or awards of retroactive benefits paid* on the basis of the Client's claim(s) within the scope of this Engagement.
>
> . . . .
>
> C. Attorney agrees that if it is not successful in obtaining any *monetary award* for Client, then Client shall have no obligation to pay any attorney fees or costs.
>
> 5. DIRECT PAYMENT OF ATTORNEY FEES
>
> Client agrees and expressly consents to having VA *withhold* the Contingent Fee *from the amount due* to Client . . . , and pay the amount of the fee directly to the Attorney as provided by VA regulations at 38 C.F.R. [§] 14.636.

R. at 1189-90 (emphasis added).

Each of the quoted provisions in essence reflects that the appellant's fee was contingent on an award that resulted in a cash payment to his client. He contracted to receive 20% of the "*funds recovered*" or "retroactive benefits *paid*," and expressly released the veteran from any obligation to pay a fee if no "*monetary award*" was obtained. *Id.* (emphasis added). Further, although the appellant now argues that the cash payment requirement in § 14.636 is invalid and contrary to the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Snyder v. Nicholson*, 489 F.3d 1213 (Fed. Cir. 2007), *see* Appellant's Substitute Brief at 9-13, this fee agreement, executed nearly 5 years after *Snyder*, reflects that VA was to withhold and pay a fee in accordance with that regulation. R. at 1190.

Based on the terms of the contract, along with the undisputed fact that the veteran was not *paid* any funds as a result of the December 2013 rating decision, in my view, the appellant has not demonstrated how he was prejudiced by any alleged misapplication of *Snyder* and, therefore, I would not obligate VA to pay a contingency fee pursuant to the statute.[2] *See Mason v. Nicholson*, 20 Vet.App. 279, 293 (2006) (finding the Board's imposition of an offset nonprejudicial where the veteran and the attorney both received what they were entitled to receive); *see also* 38 U.S.C. § 7261(b)(2). However, putting aside the incongruity in the Court sustaining the appellant's efforts to bind VA to pay a fee for which he did not contract, I cannot agree with the majority's conclusion that the Federal Circuit's reasoning in *Snyder* applies equally to the statutory prohibition against duplication of benefits. *See* 38 U.S.C. § 5304.[3]

---

[2] Although the appellant contends that the language in his contract was intended to mimic section 5904, *see* Oral Argument at 12:35-12:45, *Rosinski v. Wilkie*, U.S. Vet. App. No. 17-3293 (oral argument held Jan. 17, 2019), a plain reading reflects that this simply is not so. Section 5904(d)(1) does *not* use the terms "funds" or "paid." 38 U.S.C. § 5904. It does, however, limit the source of an attorney's fee to the benefits that are "past-due." *Id.* Thus, as argued by the Secretary, to receive a fee under the circumstances here, the contract requires the veteran to be paid, but there was no payment; and section 5904 requires an award of past-due benefits, but there were no past-due benefits owed to the veteran. *See* Oral Argument at 33:43-35:27.

[3] Regarding the appellant's assertion that prohibiting an award of attorney fees in these circumstances would disincentivize representation of retired military personnel, Appellant's Substitute Brief at 12-13, the Court noted in *Gumpenberger v. Wilkie*, that, "[a]lthough direct-pay fee agreements may be the predominant fee agreement used in veterans benefits cases, the Secretary has broadly authorized agents and attorneys to enter into other types of fee agreements" and "attorneys should . . . take care when selecting the type of fee agreement." 31 Vet.App. 33, 41 (2019).

### III. *Snyder*'s Reasoning Should Not Be Applied to Section 5304[4]

The statutory bar to dual compensation is fundamentally different from the limitation on payments to incarcerated veterans at issue in *Snyder*. Section 5313 limits the amount of compensation that may be *paid* to an incarcerated veteran who is otherwise "entitled to compensation" but for his or her incarceration. 38 U.S.C. § 5313(a)(1); *see Snyder*, 489 F.3d at 1216 (stating that "Congress addressed only the question of limiting the amount of compensation that would be paid to incarcerated felons"). However, Congress further provided in section 5313(b)(1) that "[a]ll or any part of the compensation *not paid* to a veteran by reason of subsection (a) may . . . be apportioned under the same terms and conditions as are provided under section 5307 of this title." 38 U.S.C. § 5313(b)(1). Thus, although section 5313(a)(1) limits the amount of compensation that the *veteran* may receive,[5] any compensation not paid to the veteran is available to be paid; it may be apportioned in an appropriate case. *See* 38 U.S.C. § 5307; 38 C.F.R. § 3.665 (2019).

In *Snyder*, the Federal Circuit viewed section 5313 as a "withholding device," stating that it "does not purport to change the monthly compensation awarded on the basis of [the] claim." 489 F.3d at 1218, 1220. Rather, "[t]he difference between awarded compensation and payable compensation is analogous to the difference between gross salary and net salary." *Id.* at 1218. The Federal Circuit explained that the "right to receive payment may accrue while a veteran is not presently able to enjoy actual complete receipt of the funds represented by the final award." *Id.* at 1220.

In my view, section 5304 is not merely a withholding device. It provides in pertinent part that, except for circumstances not relevant here, "not more than one award of pension,

---

[4] The prohibition against dual compensation for military retirees can be traced to the Act of 1891, Act of March 3, 1891, ch. 548, 26 Stat. 1082. Until 2001, Congress "held to the consistent view that there was no entitlement to both retired pay and [] disability [compensation] for the same period of military service." *Absher v. United States*, 805 F.2d 1025, 1027 (Fed. Cir. 1986) (per curiam); *see* National Defense Authorization Act for Fiscal Year 2002, Pub. L. No. 107-107, Div. A, Title VI, § 641(a), 115 Stat. 1012, 1149 (Dec. 28, 2001) (Contingent Authority For Concurrent Receipt Of Military Retired Pay And Veterans' Disability Compensation And Enhancement Of Special Compensation Authority), as amended, National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, Div. A, Title VI, § 641(a), 117 Stat. 1392, 1511 (Nov. 24, 2003) (Phase-In Of Full Concurrent Receipt Of Military Retired Pay And Veterans Disability Compensation For Certain Military Retirees). There is no dispute that none of the statutory exceptions applied at the time of the December 2013 rating decision at issue here.

[5] As noted by the Federal Circuit in *Snyder*, section 5313 in part reflects Congress's response to reports that excess funds received by incarcerated veterans were causing disciplinary problems in prisons. 489 F.3d at 1215-16 (citing H.R. REP. NO. 96-498, at 11-12 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4594, 4604-05).

compensation, emergency officers', regular, or reserve retirement pay . . . shall be made concurrently to any person based on such person's own service." 38 U.S.C. § 5304(a)(1). Absent one of the exceptions, the statute precludes a veteran from receiving both full retirement pay and VA benefits. 38 U.S.C. §§ 5304, 5305; *see McCord v. United States*, 943 F.3d 1354, 1358 (Fed. Cir. 2019) (concluding that section 5304(a)(1)'s prohibition against concurrent receipt bars concurrent *awards* of benefits, meaning for concurrent periods; the timing of any payment is irrelevant). In this sense, section 5304 represents Congress's limitation on the total amount of government funds that may be paid based on the same period of service. *See*, *e.g.*, Decision of the Comptroller Gen., 1961 Comp. Gen. LEXIS 2915, \*8-9 (Comp. Gen. June 28, 1961) (In cases of "retroactive entitlement to [VA] compensation or pension payments, [where] the individual has received military retirement pay during the retroactive period, . . . [and] the retirement pay equals or exceeds the amount of the VA compensation or pension, no payment by VA is necessary for the retroactive period."); *see also Absher*, 805 F.2d at 1026 (noting that the prohibition against dual compensation was intended to "save money"). Thus, unlike a section 5313(a)(1) withholding, which results in a fund of past-due benefits that may be available for apportionment and, as in *Snyder*, to pay an attorney's contingency fee, the prohibition against concurrent receipt leaves no such pool of appropriated funds from which any further payments may be made.

## IV. Past-Due Benefits Were Not Unpaid or Owed to the Veteran

Even assuming that the bar on concurrent receipt does not itself prevent payment of attorney fees in these circumstances, sections 5304 and 5904 operate together to make that result clear. Section 5904 limits the amount and the source of funds from which VA may be required to pay attorney fees up to 20% of the total amount of past-due benefits awarded on the basis of the claim. 38 U.S.C. § 5904(d)(1), (3); *see Snyder*, 489 F.3d at 1216 (noting that section 5904(d) "limits the source" of payable fees to the *past-due* benefits awarded). Although *Snyder* drew a distinction between awarded compensation and payable compensation, in *Gumpenberger*, this Court recognized that "the Federal Circuit also made an additional important conclusion about what constitutes a *past-due* benefit in the first place—namely, . . . 'the sum of each month's unpaid compensation—as determined by the claimant's disability rating—beginning on the effective date and continuing through the date of the award.'" 31 Vet.App. at 37 (quoting *Snyder*, 489 F.3d at 1218). The Court stated that "the Federal Circuit essentially equated past-due with unpaid,

21

meaning that, for there to be payment of attorney fees out of the past-due benefits awarded on the basis of the claim, there must first be an award of past-due benefits that were *unpaid or owed* to the claimant from which those fees could be paid." *Id.* (emphasis added). The Court's holding in *Gumpenberger* thus instructs that, in accordance with the language of section 5904(d), we must give meaning to both the terms "'awarded'" *and* "'past-due.'" *Id.* at 39. Congress "mandate[d] that the fees to be paid to an agent or attorney pursuant to a valid direct-pay fee agreement must come from past-due benefits awarded, not merely the benefits awarded." *Id.*

Here, it is undisputed that, at the time of the December 2013 rating decision, the veteran had already received retirement pay for the period from May 2011 through January 2014, and he did not meet any of the statutory exceptions for concurrent receipt of retired pay and VA disability compensation. Although VA determined that he was entitled to an increased disability rating, effective May 2011, he had no right to any additional VA disability compensation. Thus, for purposes of section 5904(d) and whether there were any past-due benefits awarded, there was no monthly compensation *unpaid* or *owed* to the veteran from which attorney fees could be deducted. *See Snyder*, 489 F.3d at 1218 ("Any compensation not paid to the claimant in a given month becomes a past-due benefit." (internal quotation omitted)); *Gumpenberger*, 31 Vet.App. at 37.

The majority nonetheless relies on section 5904 as VA's authority to pay the appellant's fee, stating that VA's section 5904 authority is "ultimately tethered to VA's statutory authority to 'award' benefits to claimants who establish the conditions for eligibility for such award." *Ante* at 16. In doing so, the majority essentially recognizes that Congress has not separately appropriated funds to pay an attorney, who enters into a valid direct-pay contingency fee agreement, a fee. Rather, an attorney's right attaches to what is past due, not just the award. *See Gumpenberger*, 31 Vet.App. at 38 (stating that "attorney fees can only be paid, pursuant to a direct-pay fee agreement under section 5904(d)(1), out of those benefits that were past due"); *see also Matter of Fee Agreement of Smith*, 4 Vet.App. 487, 495 (1993) (the attorney and the claimant "share a joint entitlement to the *fund* of any past-due benefits awarded" (emphasis added)). Yet, by finding generally that "VA's obligations to attorneys under section 5904 are to be determined by the amount awarded, not by the amount the veteran is actually entitled to receive," the majority fails to give due meaning to the term "past-due." *Ante* at 16. The result here is that the veteran was paid 100% of the benefits that he was awarded and entitled to receive (albeit in the form of retirement

pay) and VA must pay an additional 20% to the appellant—i.e., the United States will pay 120% for the period from May 2011 to January 2014.

## V. Conclusion

Because the prohibition against dual compensation limits the total amount that may be paid based on a period of service and no benefits were unpaid or owed to the veteran, there is simply no pool of appropriated funds that should be used to pay the veteran's attorney. Unlike the majority, I do not read sections 5304 and 5904 as requiring the government to save money by prohibiting *a veteran* from receiving any additional compensation under these circumstances but authorizing an expenditure of those funds to pay *the veteran's attorney*. I thus respectfully dissent.