# United States Court of Appeals for the Federal Circuit

2006-7239

KEITH D. SNYDER,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Meredyth D. Cohen, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Todd M. Hughes, Assistant Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Martin J. Sendek, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Robert N. Davis

# United States Court of Appeals for the Federal Circuit

2006-7239

KEITH D. SNYDER,

Claimant-Appellant,

v.

R. JAMES NICHOLSON,
Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  June 8, 2007

_____

Before MAYER, Circuit Judge,  PLAGER and CLEVENGER, Senior Circuit Judges.

CLEVENGER, Senior Circuit Judge.

Claimant-appellant Keith D. Snyder, an attorney, appeals the final decision of the United States Court of Appeals for Veterans Claims ("CAVC") affirming a denial by the Board of Veterans Appeals ("Board") of attorney fees in excess of $1,820.45 payable by the Veterans Administration ("VA") directly to Mr. Snyder arising from his successful representation before the VA of incarcerated veteran John Creekmore.  Snyder v. Nicholson, No. 04-0381 (Vet. App. Feb. 24, 2006) ("CAVC Opinion").  We reverse and remand.

The facts relevant to this appeal are undisputed. Mr. Creekmore is a Persian Gulf veteran who was in active service from June 1989 until his separation from active service in September 1990. In 1992, he was convicted of aggravated robbery and sentenced to 30 years of incarceration. During his incarceration, Mr. Creekmore underwent a series of medical evaluations in which he was diagnosed with a number of mental disorders.

In July 1994, Mr. Creekmore submitted a claim to the VA for service connection relating to his psychiatric disabilities. In October 1994, the VA's regional office ("RO") in Waco, Texas, issued a disability-rating decision denying that claim. The RO's decision was affirmed by the Board on April 28, 2000. Shortly thereafter, in July 2000, Mr. Creekmore retained the services of attorney Eric C. Conn. On December 14 of the same year, the CAVC vacated and remanded the Board's April 28 decision. Mr. Conn subsequently withdrew, and Mr. Snyder was substituted as Mr. Creekmore's counsel on May 4, 2001. The attorney-client fee contract between Mr. Snyder and Mr. Creekmore, which closely tracks the language of 38 U.S.C. § 5904, provides in relevant part:

> 3. CONTINGENT FEE. Client agrees to pay a fee equal to 20 percent of the total amount of any past-due benefits awarded on the basis of the Client's claim with the U.S. Department of Veterans Affairs. It is understood that this Contingent fee is to be paid by the VA directly to the Attorney from any past-due benefits awarded on the basis of the Client's claim.

J.A. at 55.

On September 28, 2001, the Board remanded the case to the RO for further proceedings and reconsideration of its initial rating decision. The RO concluded on remand in July 2002 that Mr. Creekmore's claim for service connection should have

been approved at a disability rating of 70 percent effective July 25, 1994. A letter from the VA explained to Mr. Creekmore that his "Total Award Amount" of past-due benefits beginning in 1994 and ending in January 2003 (the date of the letter) came to $93,044 based on the VA's "70% compensation award[]." However, the letter further explained to Mr. Creekmore that, pursuant to 38 U.S.C. § 5313, the VA would be "withholding all but the 10% rate of compensation" due to his incarceration. In addition, the VA's letter told Mr. Creekmore that the VA was withholding "20 percent of [his] past due benefits for attorney fees." The VA also wrote a letter to Mr. Snyder explaining that his attorney fees were calculated as a percentage of Mr. Creekmore's post-withholding past-due benefits, not as a percentage of Mr. Creekmore's pre-withholding past-due benefits. Mr. Snyder responded to the VA with the timely filing of a notice of disagreement, explaining that his fees should have been calculated as a percentage of the much larger, pre-withholding past-due benefits.

The Board reviewed the VA's decision and affirmed on February 2, 2004. Mr. Snyder then appealed to the CAVC. In a February 24, 2006 written opinion, the CAVC characterized the statutes at issue—sections 5904 and 5313 of title 38—as being like "two ships passing in the night" which, although unambiguous when applied separately, create ambiguity "[w]hen applied in concert." As such, the CAVC looked to 20 C.F.R. § 20.609—the VA's interpretive regulation that drove the Board to affirm—for resolution and concluded both that the VA's interpretation of this alleged ambiguity is reasonable, and therefore that the Board did not err in denying Mr. Snyder's claim for additional fees. Mr. Snyder now appeals to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292(c).

## II

"In reviewing a CAVC decision, this court decides 'all relevant questions of law, including interpreting constitutional and statutory provisions' and must set aside any regulation or interpretation thereof 'other than a determination as to a factual matter' relied upon by the Veterans Court that it finds to be '(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law.'   38 U.S.C. § 7292(d)(1) (2000).   This court reviews legal determinations of the CAVC under a de novo standard."   Matthews v. Nicholson, 456 F.3d 1377, 1379 (Fed. Cir. 2006).  This appeal presents only legal questions.

## III

The two title 38 statutes at issue in this case serve entirely different purposes in the area of veterans' benefits.  A brief description of each statute will suffice.

In 1980, Congress addressed the issue of receipt by incarcerated veterans of benefit payments.  Congress recognized that such veterans were receiving benefits that were not offset to account for expenses, such as room and board, that were provided by the prisons.  See H.R. Rep. No. 96-498, at 11-12 (1980), as reprinted in 1980 U.S.C.C.A.N. 4594, 4604-05.  Congress also understood that such excess monies received by incarcerated veterans were causing disciplinary problems in prisons.  Id. at 11 (noting improper use in prison of excess benefits payments and risk of veterans having money stolen from them by fellow prisoners).  Congress responded with section 504(a) of the Veterans' Rehabilitation and Education Amendments of 1980, which

reduces the amount of service-connected disability compensation payable directly to incarcerated veterans who have a service connected disability rating of 20 percent or higher. For such veterans, the maximum amount they may receive while incarcerated is computed as if their disability rating were only 10 percent. Pub. L. No. 96-385, § 504(a), 1980 U.S.C.C.A.N. (94 Stat.) 1528, 1534-35 (codified as amended at 38 U.S.C. § 5313). The precise statutory language that achieves the reduction in benefits payable to an incarcerated veteran is:

> [A]ny person who is entitled to compensation . . . and who is incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony shall not be paid such compensation . . . for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends, in an amount that exceeds--
> (A) in the case of a veteran with a service-connected disability rated at 20 percent or more, the rate of compensation payable under section 1114(a) of this title [i.e., service-connected disability rating of ten percent].

38 U.S.C. § 5313(a)(1).

Section 5313, entitled "Limitation on payment of compensation . . . to persons incarcerated for conviction of a felony," is clear on its face, as the CAVC held. In that statute Congress addressed only the question of limiting the amount of compensation that would be paid to incarcerated felons.

Eight years later, Congress enacted section 5904, which concerns the terms and conditions under which agents and attorneys may be recognized and compensated for service to veterans who seek benefits. No fee can be charged by an attorney to a veteran for services rendered until the Board first makes a final decision in the case. 38 U.S.C. § 5904(c)(1). As a practical matter, this means that veterans will not be represented by attorneys until their claims for benefits have been rejected by the Board.

After a first final decision by the Board, an attorney must file a copy of any fee agreement with the Board, which has authority to review the agreement and order a reduction in the fee called for by the agreement if the fee is excessive or unreasonable. 38 U.S.C. § 5904(c)(2). The total fee payable to any attorney under such a fee agreement "may not exceed 20 percent of the total amount of any <u>past-due benefits awarded</u> on the basis of the claim." 38 U.S.C. § 5904(d)(1) (emphasis added). Thus, the statute limits the fee which an attorney can earn to the past-due benefits awarded to the veteran, and further limits the amount of the fee to no more than 20 percent of the total past-due benefits awarded. An attorney thus cannot claim as fee a portion of the future monthly benefits that will be paid to the veteran. The statute further provides that a fee pursuant to a statutory fee agreement "is to be paid to the attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim." 38 U.S.C. § 5904(d)(2)(A)(i).

Section 5904 makes no mention of special provisions for attorneys who, after final Board decision, undertake representation of incarcerated veterans. The statute is, as held by the CAVC, perfectly clear on its face. It only dictates when attorneys may represent veterans under fee agreements, and it simply limits the source and amount of fees to "the total amount of any past-due benefits awarded on the basis of the claim."

Literal application of these two statutes to the facts of this case seems to permit of no result other than reduced compensation for Mr. Creekmore during his incarceration and a payment, per the attorney fee agreement, to Mr. Snyder equal to 20 percent of the total past-due benefits awarded to Mr. Creekmore based on his 70 percent disability rating.

It is undisputed that Mr. Creekmore's monthly compensation while incarcerated was properly reduced.[1] But how, we must ask, did the VA, the Board and the CAVC reason that Mr. Snyder's fee is limited to $1,820, which the VA calculated to be 20 percent (per the fee agreement) of past-due benefits calculated at a 10 percent disability rating from August 1, 1994 (the date of Mr. Creekmore's original claim) until July 19, 2002 (the date the RO sustained Mr. Creekmore's claim)? In short, how did a stated award of past-due benefits of 70 percent, as actually awarded by the VA, become converted to an award of past due benefits of only 10 percent?

IV

The CAVC perceived an ambiguity in the term "past-due benefits" in section 5904(d)(1), when applied to an attorney representing an incarcerated veteran who obtains his past-due benefits award while incarcerated. According to the CAVC, and the VA on appeal here, such ambiguity has been cured by the VA's regulations under section 5904, found at 38 C.F.R. § 20.609. In those regulations, the VA has specified that "[t]he award of past-due benefits results in a cash payment to a claimant . . . from which the fee may be deducted." 38 C.F.R. § 20.609(h)(iii). Under this regulation, the cash payment to Mr. Creekmore is insufficient to cover the $18,608 Mr. Snyder seeks. The regulations also specify that past-due benefits "means a non-recurring payment . . . which represents the total amount of recurring cash payments which accrued between

---

[1] While incarcerated, Mr. Creekmore cannot receive compensation in excess of that allowed by section 5313. Upon his release, his monthly on-going compensation will be restored to his 70 percent disability rating, assuming he is still entitled to that rating at that time. At oral argument, it was suggested that the amount of past-due benefits reduced under section 5313 is forever lost to Mr. Creekmore. That issue is not before us, and we express no view on it.

the effective date of the award . . . and the date of the grant of the benefit." 38 C.F.R. § 20.609(h)(3). Because Mr. Creekmore was incarcerated when his entitlement to past-due benefits was decided, the CAVC reasoned that under this regulation Mr. Creekmore's past-due benefits award could not exceed the sum attributable to a 10 percent disability rating, since such is the benefits payment level mandated by Congress for an incarcerated veteran.

V

The primary dispute between the parties in this case concerns the meaning of "total amount of any past-due benefits awarded on the basis of the claim" as that phrase is used in 38 U.S.C. § 5904(d)(1). "As in any case of statutory construction, our analysis begins with 'the language of the statute.' Estate of Cowart v. Nicklos Drilling Co., [505 U.S. 469, 475 (1992)]. And where the statutory language provides a clear answer, it ends there as well." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). "'If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect,' [Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)], and an agency's alternative interpretation of the statute is not entitled to deference . . . ." Bull v. United States, 479 F.3d 1365, 1376 (Fed. Cir. 2007).

Applying these principles here, the statutory language does in fact provide "a clear answer" to the meaning of section 5904(d)(1). A claimant's service-connected disability forms the "basis" of his or her claim for compensation. See 38 U.S.C. § 1110 ("For disability resulting from personal injury suffered . . . in line of duty . . . the United

States will pay to any veteran thus disabled . . . compensation as provided in [38 U.S.C. § 1114.]").  And in order to make an "award[]" on the "basis" of that claim, the VA must assign a disability rating to the claimant by determining "the average impairments of earning capacity resulting from [the claimant's] injuries in civil occupations."  38 U.S.C. § 1155.  That rating is then used to set the claimant's monthly compensation.  38 U.S.C. § 1114.  Any compensation not paid to the claimant in a given month becomes a "past-due benefit[]."  See, e.g., 38 U.S.C. § 5510(2) (categorizing "compensation" as a "type[] of benefit").  Accordingly, we hold that the "total amount of any past-due benefits awarded on the basis of the claim" is the sum of each month's unpaid compensation— as determined by the claimant's disability rating—beginning on the effective date and continuing through the date of the award.

The statutory limitation on payments to an incarcerated veteran does not purport to change the monthly compensation awarded on the basis of a veteran's claim. Rather, section 5313(a)(1) merely instructs that a certain amount of "such compensation" be withheld.  38 U.S.C. § 5313(a)(1).  The difference between awarded compensation and payable compensation is analogous to the difference between gross salary and net salary.  Just as a person's net salary might reflect, for example, a Social Security withholding, an incarcerated veteran's payable compensation reflects a section 5313(a)(1) withholding.  And just as a Social Security withholding does not alter the person's gross salary, a section 5313(a)(1) withholding does not alter the incarcerated veteran's awarded compensation.  Thus, while we agree to an extent with the CAVC's characterization of these statutory provisions—section 5904(d)(1) and section

5313(a)(1)—as being like "two ships passing in the night," we cannot agree with the CAVC's conclusion that they must therefore be forced to collide.

The statutes at issue offer no reason why the definition of an award of past-due benefits, as the predicate for payment of agreed and approved attorney fees, should change from time to time even with regard to the same veteran. Here, it is undeniable that the VA awarded Mr. Creekmore disability compensation at the 70 percent rating level in July 2002. Under the rationale of the CAVC, this award should actually have been made at a 10 percent rating because the VA knew that Mr. Creekmore was incarcerated when he applied for benefits. But the VA does not assert that the RO decision establishing the 70 percent rating was incorrect, nor was the VA letter announcement in January 2003 of an award based on a 70 percent rating incorrect. Nor should the award based on a 10 percent rating, insisted upon by the VA and the CAVC, change back to an award based on a 70 percent rating in the event of discharge from incarceration or apportionment to qualifying dependents. See, e.g., 38 U.S.C. § 5313(b)(1) ("All or any part of the compensation not paid to a veteran by reason of subsection (a) of this section may, as appropriate in an individual case, be apportioned under the same terms and conditions as are provided under section 5307 of this title.").

The CAVC erred in requiring that the two statutes be read together in the light of 38 C.F.R. § 20.609, a regulation that deals with "Payment of representative's fees" generally and does not address the topic of payment of such fees when the veteran is incarcerated. In its analysis, the CAVC focused on the term "past-due benefits" without sufficient emphasis on the word "awarded" as it appears in section 5904. The VA in this very case defined the term "past-due benefits awarded" when it wrote to Mr. Creekmore

in January 2003 stating that the total award amount of his past-due benefits was computed on the basis of a 70 percent disability rating, not the 10 percent disability rating prescribed by section 5313 during incarceration. The word "award" is clear and unambiguous, and in the parlance of veterans' benefits it means the amount stated as the award for success in pursuit of a claim for benefits.

The CAVC's error is further underscored by the VA's use of "award" in the regulation promulgated to implement 38 U.S.C. § 5313, namely, 38 C.F.R. § 3.665. Though "award" is not defined therein, the context in which the word is used in section 3.665 is informative. For example, the regulation speaks of an "<u>award</u> of compensation," 38 C.F.R. § 3.665(c)(2)(ii) (emphasis added), which "shall be resumed" upon a veteran's release from incarceration, 38 C.F.R. § 3.665(i)(1). It is axiomatic that Mr. Creekmore's "award" could never be "resumed" to the 70 percent level if it had been fixed at the 10 percent level since the effective date of July 24, 1994. Thus, it must be the case that the VA regulations view the amount "awarded" as distinct from the amount actually payable. Section 3.665 further provides that "any increased compensation <u>awarded</u> to an incarcerated veteran" having a prior disability rating of 20 percent or higher will not actually be paid to the veteran. 38 C.F.R. § 3.665(j) (emphasis added). So, for example, were Mr. Creekmore re-rated at 80 percent at some future time, he would see no increase in his payable benefits while he remains incarcerated, but he would nevertheless have been "awarded" increased compensation for the purposes of the VA regulations. Here again, then, the amount "awarded" is distinct from the amount payable.

That such should be the case is no surprise, for under the CAVC's rationale the amount "awarded" to similarly-situated veterans could vary greatly depending upon facts completely unrelated to the facts serving as "the basis of the claim." For example, if Mr. Creekmore had a spouse qualifying for apportionment, the amount he was "awarded" might be calculated using monthly payments corresponding to any rating at or below the 70 percent rating, 38 U.S.C. § 5313(b)(1); 38 C.F.R. § 3.665(e), unless of course his spouse was incarcerated, in which case the amount Mr. Creekmore was "awarded" might require further modification, see 38 U.S.C. § 5313(b)(3) ("No apportionment may be made under this subsection to or on behalf of any person who is incarcerated in a Federal, State, or local penal institution for conviction of a felony."). The amount Mr. Creekmore was "awarded" might be different yet if his conviction were someday overturned. See 38 C.F.R. § 3.665(m) ("If a conviction is overturned on appeal, any compensation or DIC withheld under this section as a result of incarceration for such conviction (less the amount of any apportionment) shall be restored to the beneficiary."). It is therefore clear that the provisions of 38 C.F.R. § 20.609, when read in conjunction with the provisions of both 38 C.F.R. § 3.665 and the statutes themselves, were either construed unduly narrowly by the CAVC, or written unduly narrowly by the VA.[2]

Suffice it to say, and as noted above, section 5313 does not serve to restate the award of past-due benefits; instead, it only serves as a withholding device to assure that veterans in incarceration as a result of felony convictions do not receive more by way of

---

[2] As it is not properly before us, we leave unanswered the question of section 20.609's validity.

cash payments than would be attributed to disability ratings greater than 10 percent. As such, a right to receive payment may accrue while a veteran is not presently able to enjoy actual complete receipt of the funds represented by the final award.

VI

For the reasons stated, we reverse the decision of the CAVC and remand with instructions for the VA to calculate Mr. Snyder's 20 percent fee on the basis of Mr. Creekmore's award of a 70 percent disability rating, as aggregated over the appropriate time period.

<u>REVERSED AND REMANDED</u>