# United States Court of Appeals for the Federal Circuit

---

**BILLY W. SLAUGHTER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1367

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-2524, Judge Amanda L. Meredith.

---

Decided: March 30, 2022

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

KELLY A. KRYSTYNIAK, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, MARTIN F. HOCKEY, JR., LIRIDONA SINANI; EVAN SCOTT GRANT, BRIAN D. GRIFFIN, BRANDON A. JONAS, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before NEWMAN, REYNA, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Billy W. Slaughter served on active duty in the United States Navy for two decades from August 1975 to August 1995. J.A. 3. In June 2008, a Veterans Affairs ("VA") Regional Office determined that Mr. Slaughter, who is right-handed, suffered right ulnar nerve[1] entrapment as a result of his service. J.A. 44. VA awarded him a 10% disability rating under 38 C.F.R. § 4.124a, Diagnostic Code ("DC") 8516. J.A. 44; J.A. 35. Over the next several years, Mr. Slaughter pursued a higher disability rating. During those proceedings, which included several VA medical examinations, examiners additionally diagnosed Mr. Slaughter with a median nerve[2] injury that has not been found to be connected to his military service. J.A. 3–5.

Eventually, in December 2018, the Board of Veterans' Appeals ("Board") increased Mr. Slaughter's rating for right ulnar nerve entrapment to 40%. J.A. 32, 38. The Board found that it could not distinguish the symptoms of

———————————

[1] The ulnar nerve is a major nerve in the arm that runs from the brachial plexus to the hand. It controls the muscles that move the fingers and thumb and conveys sensation from the fifth (little) finger, part of the fourth (ring) finger, and the adjacent palm. Appellee's Br. 3 n.3 (citing *Ulnar Nerve*, Black's Medical Dictionary (43rd ed. 2017)).

[2] The median nerve also resides in the arm. It enervates the outer side of the arm and hand, providing feeling and movement to the thumb side of the hand, including the thumb and first two fingers. Appellee's Br. 5 n.7 (citing *Median Nerve*, Black's Medical Dictionary (43rd ed. 2017); 38 C.F.R. § 4.124a, DC 8515).

Mr. Slaughter's service-connected ulnar nerve entrapment from those of his non-service-connected median nerve injury. J.A. 38. It, thus, attributed the entirety of the disability to the service-connected right ulnar nerve injury and awarded Mr. Slaughter a 40% disability rating for severe incomplete paralysis of his right hand under DC 8516. J.A. 38. The Board determined that it would be inappropriate to rate Mr. Slaughter under DC 8512, which provides ratings for injuries to the lower radicular group,[3] because only Mr. Slaughter's ulnar nerve entrapment was connected to his service. J.A. 38.

On appeal, the Court of Appeals for Veterans Claims ("Veterans Court") affirmed the Board's decision. J.A. 2–3. The Veterans Court never addressed Mr. Slaughter's substantive argument that his disability should have been rated under DC 8512. Rather, it found that Mr. Slaughter had not shown prejudice stemming from the Board's alleged error in failing to consider a rating under DC 8512. J.A. 7–8.

Mr. Slaughter appeals from the Veterans Court's decision. As we explain below, we have jurisdiction to hear his appeal under 38 U.S.C. § 7292(c).

Although we hold that the Veterans Court legally erred in its prejudicial error analysis, that error was itself harmless because the Board correctly interpreted § 4.124a. Thus, we affirm.

## I. DISCUSSION

Mr. Slaughter raises two arguments on appeal. He argues that the Veterans Court applied the wrong standard in its prejudicial error analysis. He also argues that the

---

[3]    The lower radicular group involves nerves enervating "all intrinsic muscles of hand" and the flexors of the wrist and fingers. 38 C.F.R. § 4.124a, DC 8512.

Board erred in its interpretation of 38 C.F.R. § 4.124a. We address each argument in turn.

### A.  Prejudicial Error

As a preliminary matter, the government asserts that the Veterans Court's prejudicial error decision is a factual decision outside of this court's jurisdiction to review. Appellee's Br. 14. We disagree. We have expressly rejected the proposition that we lack any jurisdiction to review the Veterans Court's prejudicial error determinations. *Tadlock v. McDonough*, 5 F.4th 1327, 1332–33 (Fed. Cir. 2021). As with all decisions from the Veterans Court, we have "jurisdiction to review a 'rule of law,' including a rule established by a judicial precedent of the Veterans Court," but we "may not review the application of law to the facts of a particular case." *King v. Shinseki*, 700 F.3d 1339, 1346 (Fed. Cir. 2012). Mr. Slaughter argues that the Veterans Court applied the wrong standard when it required him to show that the Board's error resulted in lost benefits—a legal error rather than a factual one. Appellant's Opening Br. 17–21. Thus, we have jurisdiction to address Mr. Slaughter's argument, and we do so here. We review the issue of whether the Veterans Court applied the correct legal standard without deference. *Euzebio v. McDonough*, 989 F.3d 1305, 1317–18 (Fed. Cir. 2021).

The Veterans Court applied too rigid of a prejudicial error standard and placed too heavy a burden on Mr. Slaughter to show prejudice. In *Shinseki v. Sanders*, the Supreme Court explained that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" but that this is not "a particularly onerous requirement." 556 U.S. 396, 409–10 (2009). The Supreme Court explained that an appellant may point to an allegedly erroneous ruling and "[o]ften the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said." *Id.* at 410. The Supreme Court also

explained that because "Congress has expressed special so-licitude for the veterans' cause[,] . . . a reviewing court [might] consider harmful in a veteran's case error that it might consider harmless in other circumstances." *Id.* at 412. The Veterans Court failed to comply with these in-structions from the Supreme Court. Rather than looking to the circumstances of the case to see if the alleged error was harmful, the Veterans Court required Mr. Slaughter to specifically allege prejudice and "suggest or point to evi-dence showing that he would be *entitled* to a higher rating under DC 8512." J.A. 7 (emphasis added).

The Veterans Court should have looked to the circum-stances of the case and not faulted Mr. Slaughter for insuf-ficiently demonstrating prejudice. We note that the circumstances here indicate that, if the Board erroneously failed to consider a rating under DC 8512 rather than DC 8516, the Board's error likely caused prejudice. Mr. Slaughter pointed out to the Veterans Court that DC 8512 and DC 8516 provide for different ratings for the same symptoms. For example, a rating for severe incomplete pa-ralysis of a veteran's dominant hand under DC 8516 (the rating Mr. Slaughter received) is 40%. A rating for severe incomplete paralysis of a veteran's dominant hand under DC 8512 is 50%. As the Veterans Court has previously stated, "prejudice . . . can be shown by demonstrating that the error . . . affected or could have affected the outcome of the determination." *Simmons v. Wilkie*, 30 Vet. App. 267, 279 (Vet. App. 2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020).

Although the Veterans Court erred in its prejudicial er-ror analysis, that error is, ultimately, harmless because the Board did not err in finding that DC 8512 is not applicable where the veteran's only service-connected nerve injury is to the ulnar nerve. We turn now to the Board's interpreta-tion of the note in § 4.124a.

## B.   Interpretation of 38 C.F.R. § 4.124a

The government, again, argues that we lack jurisdiction to entertain Mr. Slaughter's arguments concerning the Board's interpretation of 38 C.F.R. § 4.124a as not permitting a rating under DC 8512.  Appellee's Br. 11–14.  The government asserts that Mr. Slaughter's appeal asks us to review the Board's selection of a certain diagnostic code based on the facts of Mr. Slaughter's diagnoses; something we lack jurisdiction to do.  Appellee's Br. 12–14 (citing, among other cases, *Scott v. Wilkie*, 920 F.3d 1375, 1378 n.1 (Fed. Cir. 2019)).  We, again, disagree.

We have jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" under 38 U.S.C. § 7292(c).  We have previously exercised jurisdiction in analogous cases where a veteran has challenged the Board's and Veterans Court's interpretations of regulations.  For example, in *Langdon v. McDonough*, we exercised jurisdiction to hear an appeal in which a veteran challenged the Veterans Court's interpretation of a diagnostic code found in 38 C.F.R. § 4.71a. 1 F.4th 1008, 1009 (Fed. Cir. 2021).  Similarly, we have jurisdiction to review the interpretation of 38 C.F.R. § 4.124a.

Mr. Slaughter's arguments on appeal are directed to the interpretation of a note in 38 C.F.R. § 4.124a that states "[c]ombined nerve injuries should be rated by reference to the major involvement, or if sufficient in extent, consider radicular group ratings."  He does not argue on appeal that the Board erred in assigning a rating under DC 8516 rather than under DC 8512—a factual finding that we would lack jurisdiction to review.  Rather, he argues that the Board legally erred in holding that DC 8512 is unavailable where only one of two nerve injuries is service-connected.  Appellant's Opening Br. 10–16.  We have jurisdiction to consider that legal issue.

That the Veterans Court did not address the Board's interpretation of 38 C.F.R. § 4.124a does not deprive us of jurisdiction to decide the issue. "[A] question otherwise permissible for our review under 38 U.S.C. § 7292 does not fail the jurisdictional test simply because it was ignored or silently rejected by the Court of Veterans Appeals." *Linville v. West*, 165 F.3d 1382, 1384–85 (Fed. Cir. 1999).

We review the Veterans Court's interpretation of regulations *de novo*. *Hodge v. West*, 155 F.3d 1356, 1361 (Fed. Cir. 1998). As we find that the phrase "combined nerve injuries" in the regulation at issue here, a note in § 4.124a, unambiguously refers to service-connected injuries, we need not defer to VA's interpretation of the regulation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–15 (2019).

Mr. Slaughter argues that a service-connected injury to one nerve (here, the ulnar nerve) and a non-service-connected injury to a second nerve (here, the median nerve) together constitute a "combined nerve injur[y]" under the note in § 4.124a requiring that "[c]ombined nerve injuries should be rated by reference to the major involvement, or if sufficient in extent, consider radicular group ratings." 38 C.F.R. § 4.124a; Appellant's Opening Br. 10–16. We disagree with Mr. Slaughter's interpretation of "combined nerve injuries." We hold that "combined nerve injuries" in the note refers to service-connected injuries, not to a combination of service-connected and non-service-connected injuries.

Our conclusion is evidenced by the first sentence of 38 C.F.R. § 4.1, which states: "This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries *encountered as a result of or incident to military service*." 38 C.F.R. § 4.1 (emphasis added). Nothing in the text of the note in § 4.124a indicates that "injuries" in "combined nerve injuries" is meant to depart from the understanding of the scope of the rating schedule provided in § 4.1.

Where VA intends to refer to a non-service-connected injury, or, more specifically, intends to treat a non-service-connected injury as though it were service-connected, it possesses the language to do so. In other regulations that do not apply in this case, VA has articulated special provisions for treating non-service-connected injuries as though they were service-connected. For example, 38 C.F.R. § 3.383 provides that, where a veteran has "[l]oss or loss of use of one kidney as a result of service-connected disability and involvement of the other kidney as a result of non-service-connected disability," "[c]ompensation is payable for the combinations of service-connected and nonservice-connected disabilities . . . as if both disabilities were service-connected." 38 C.F.R. § 3.383(a)(2). Section 3.383 similarly provides for treating non-service-connected injuries as though they were service-connected for other paired organs, such as the eyes, ears, lungs, or hands. We are aware of no such provision providing for treating non-service-connected nerve injuries as though they were service-connected.[4]

---

[4]    At oral argument, Mr. Slaughter's attorney identified 38 C.F.R. § 4.21 as providing for treating non-service-connected nerve injuries as though they were service-connected. Oral Arg. 30:20–30:50, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1367_01102022.mp3. That provision provides:

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances.

Section 3.383 shows that VA knew how to provide for compensation of non-service-connected injuries as though they were service-connected.  It did not include any such explicit provision in § 4.124a.  In 38 C.F.R. § 4.14, VA acknowledged that "[d]isability from injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent, so that special rules are included in the appropriate bodily system for their evaluation."  But, unlike 38 C.F.R. § 3.383(a)(2), those special rules do not provide for treating non-service-connected injuries as though they were service-connected.  Rather, the relevant special rule merely provides "[c]ombined nerve injuries should be rated by reference to the major involvement, or if sufficient in extent, consider radicular group ratings."  38 C.F.R. § 4.124a.  As explained above, "injuries" in that note refers to service-connected injuries.

Mr. Slaughter argues that the injury itself, and whether that injury is or is not connected to military service, is irrelevant because the law requires VA to rate disabilities, not injuries.  Appellant's Reply Br. 6.  We disagree.  Contrary to Mr. Slaughter's assertion, a disability rating, at least under § 4.124a, depends on both the injury and the resulting disability.  This is apparent in the structure of the diagnostic codes themselves, which in § 4.124a are organized first by injured nerve or nerve group and second by resultant disability.  For example, DC 8516, the diagnostic code under which the Board rated Mr. Slaughter, reads as follows:

| DC 8516: The Ulnar Nerve | | |
|---|---|---|
| Rating | Major | Minor |

38 U.S.C. § 4.21.  Section 4.21 is inapposite.  It does not provide for treating non-service-connected nerve injuries as though they were service-connected.

| Paralysis of: | | |
|---|---|---|
| Complete; the "griffin claw" deformity, due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers cannot spread the fingers (or reverse), cannot adduct the thumb; flexion of wrist weakened | 60 | 50 |
| Incomplete: | | |
| Severe | 40 | 30 |
| Moderate | 30 | 20 |
| Mild | 10 | 10 |

As this diagnostic code and others like it make clear, the regulation at issue requires reference to the injury that causes a veteran's disability, where such reference is possible. This conclusion is confirmed by 38 C.F.R. § 4.120, which states, *inter alia*: "In rating peripheral nerve injuries and their residuals, *attention should be given to the site and character of the injury*, the relative impairment in motor function, trophic changes, or sensory disturbances." 38 C.F.R. § 4.120 (emphasis added).

Because we find that the phrase "combined nerve injuries" does not include a service-connected injury to one nerve and a non-service-connected injury to another, we need not reach Mr. Slaughter's arguments about what it means to "consider radicular group ratings" as required by the inapplicable note in § 4.124a. The existence of a "combined nerve injur[y]" is a condition precedent to such

SLAUGHTER v. MCDONOUGH                                    11

consideration—where no "combined nerve injur[y]" exists, as here, the Board need not consider a radicular group rating.

## II.  CONCLUSION

We have considered Mr. Slaughter's other arguments on appeal and find them unavailing.  For the foregoing reasons, we affirm.

### **AFFIRMED**

#### COSTS

No costs.