# United States Court of Appeals for the Federal Circuit

---

**KENNETH DOJAQUEZ,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-1045

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-1396, Judge Coral Wong Pietsch.

---

Decided: August 27, 2024

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; CHRISTA A. SHRIBER, JONATHAN ELLIOTT TAYLOR, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before REYNA, HUGHES, and CUNNINGHAM, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Kenneth Dojaquez appeals the United States Court of Appeals for Veterans Claims' decision, which affirmed the Board of Veterans' Appeals' decision concluding that Mr. Dojaquez was not entitled to additional attorneys fees under 38 U.S.C. § 5904(d)(3). *Dojaquez v. McDonough*, 2022 WL 2258085 (Vet. App. June 23, 2022), J.A. 1–7. On appeal, Mr. Dojaquez contends that § 5904(d)(3) should be interpreted so that he receives attorneys fees from the effective date of Mr. Dojaquez's client's increased disability rating through April 26, 2019, the date the agency notified Mr. Dojaquez's client of its decision awarding past-due benefits. The Board and the Veterans Court applied § 5904(d) and each concluded that Mr. Dojaquez was only entitled to attorneys fees through March 2, 2019, the date of the agency's decision assigning an effective date. We affirm.

I

We begin by briefly discussing § 5904(d) before turning to the facts giving rise to the present appeal.

A

Section 5904 of title 38 "concerns the terms and conditions under which agents and attorneys may be recognized and compensated for service to veterans who seek benefits." *Snyder v. Nicholson*, 489 F.3d 1213, 1216 (Fed. Cir. 2007); *see also* 38 U.S.C. § 5904(d). In particular, § 5904(d)(1) "limits the fee which an attorney can earn to the past-due benefits awarded to the veteran, and further limits the amount of the fee to no more than 20 percent of the total past-due benefits awarded." *Snyder*, 489 F.3d at 1216. This alleviated Congress's concern that "attorneys

would get rich at the veteran's expense" by "carefully limit[ing] the amounts that attorneys would be allowed to receive." *Veterans' Administration Adjudication Procedure and Judicial Review Act Before the S. Comm. on Veterans' Affs.*, 100th Cong. 170–76 (1988) (statement of Sen. John Kerry).

Past-due benefits are defined by regulation, 38 C.F.R. § 14.636(h)(3), and constitute "any compensation not paid to the claimant[1] in a given month," *Snyder*, 489 F.3d at 1218 (cleaned up). Once there is a determination that a veteran is entitled to past-due benefits, the agency can compensate the veteran for the past-due benefits in a lump sum and adjust the veteran's ongoing recurring benefits payments accordingly.

Pursuant to a fee agreement between an attorney and their client, the attorney can be paid by the Secretary directly from any awarded past-due benefits. *See* 38 U.S.C. § 5904(d)(2)(A), (3). In doing so, the Secretary withholds a portion of the past-due benefits from the claimant. *Id.* § 5904(d)(3). However, the Secretary cannot withhold, to pay a claimant's attorney, any portion of the claimant's recurring benefits, which are paid after "the date of the final decision . . . making (or ordering the making of) the award." *Id.* In full, § 5904(d) provides:

**(d) Payment of fees out of past-due benefits**.--

(1) When a claimant and an agent or attorney have entered into a fee agreement described in paragraph (2), the total fee payable to the agent or attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim.

---

[1] We use "claimant" and "veteran" interchangeably throughout this opinion.

(2)(A) A fee agreement referred to in paragraph (1) is one under which the total amount of the fee payable to the agent or attorney--

(i) is to be paid to the agent or attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim; and

(ii) is contingent on whether or not the matter is resolved in a manner favorable to the claimant.

(3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims, the Secretary may direct that payment of any fee to an agent or attorney under a fee arrangement described in paragraph (1) be made out of such past-due benefits. In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after *the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims making (or ordering the making of) the award.*

38 U.S.C. § 5904(d) (emphasis added).[2]

On appeal, Mr. Dojaquez focuses on the proper interpretation of § 5904(d)(3) and, more particularly, on how "the date of the final decision . . . making (or ordering the

---

[2]   Section 5904(d) is implemented in 38 C.F.R. § 14.636(h), which is titled, "Payment of fees by Department of Veterans Affairs directly to an agent or attorney from past-due benefits." Mr. Dojaquez does not challenge 38 C.F.R. § 14.636(h)(3), and we do not consider it further.

making of) the award" should be understood. Appellant's Br. 16–24.

B

Claimant Billy Wayne Slaughter served in the U.S. Navy from August 1985 to August 1995. In 2008, Mr. Slaughter was awarded a 10% disability rating, effective August 31, 2007, for service-connected right ulnar nerve entrapment. In 2013, the agency continued Mr. Slaughter's 10% disability rating, and Mr. Slaughter appealed to the Board of Veterans' Appeals. Pursuant to § 5904, Mr. Slaughter entered into a contingency fee agreement with Mr. Dojaquez, and Mr. Dojaquez represented Mr. Slaughter before the Board. Mr. Slaughter's appeal was successful, and the Board determined, in a decision dated December 18, 2018, that Mr. Slaughter was entitled to a 40% disability rating for his right ulnar nerve entrapment. The agency then implemented the 40% rating in a decision dated March 2, 2019, and assigned Mr. Slaughter's right ulnar nerve entrapment an August 1, 2012, effective date. Because of the increased disability rating, Mr. Slaughter was entitled to benefits over and above what he had been receiving in his recurring benefits payments. The benefits that Mr. Slaughter was entitled to but had not yet received are "past-due" benefits.

The agency did not notify Mr. Slaughter of its March 2, 2019, decision assigning an effective date until April 26, 2019, the date of a letter from the agency. On that same day, the agency sent a letter to Mr. Dojaquez stating that Mr. Slaughter was owed $13,191.96 in past-due benefits, and that $2,638.39 (or 20%) of that amount would be paid directly to Mr. Dojaquez pursuant to their contingency fee agreement. The agency calculated the past-due benefits amount, $13,191.96, based on how much Mr. Slaughter should have been "paid from the [August 1, 2012] effective date of the award to the date of the rating decision

awarding the benefit" on March 2, 2019. J.A. 2 (quoting J.A. 147–48).

Mr. Dojaquez challenged the agency's use of March 2, 2019, as the endpoint for the attorneys fees calculation, arguing that the endpoint should be April 26, 2019, when Mr. Slaughter was notified of the March 2, 2019, award decision. The Board rejected Mr. Dojaquez's argument, relying on § 5904(d)(3), and Mr. Dojaquez appealed to the Veterans Court, which affirmed. The Veterans Court concluded it "need not reach [Mr. Dojaquez's § 5904(d)(3)] arguments because this appeal can be decided based on [§] 5904(d)(1) and established caselaw." J.A. 4–5. Mr. Dojaquez timely appealed to this court, continuing to argue he should have been paid more for his representation of Mr. Slaughter.

## II

Our jurisdiction to review a decision of the Veterans Court is limited by 38 U.S.C. § 7292. Under subsection (d)(1) of § 7292, we will "hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon" in the Veterans Court's decision that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." 38 U.S.C. § 7292. We have jurisdiction to review, on appeal, the proper interpretation of a statute that the Veterans Court "ignored or silently rejected." *Linville v. West*, 165 F.3d 1382, 1384–85 (Fed. Cir. 1999); *see also Slaughter v. McDonough*, 29 F.4th 1351, 1356 (Fed. Cir. 2022) (same). Therefore, we may review the proper interpretation of § 5904(d)(3) even though the Veterans Court declined to address it.

We review questions of law, such as the validity of a statute or regulation, or an interpretation thereof, de novo. 38 U.S.C. § 7292(c); *see also Mayfield v. Nicholson*, 499 F.3d 1317, 1321 (Fed. Cir. 2007).

## III

On appeal, Mr. Dojaquez advances his own statutory interpretation of "the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims making (or ordering the making of) the award," as that phrase is used in 38 U.S.C. § 5904(d)(3). Mr. Dojaquez argues that "the only reasonable interpretation of § 5904(d)(3)" is one where "the date of the final decision" is the date "when Mr. Slaughter was actually informed of [the] VA's award of past-due benefits," or, in this case, April 26, 2019, rather than March 2, 2019, the date of the agency's rating decision assigning an effective date. Appellant's Br. 11.

We reject Mr. Dojaquez's interpretation of § 5904(d)(3) and hold that the end date for the past-due benefits calculation under § 5904(d)(1) and *Snyder* is also "the date of the final decision" referenced in § 5904(d)(3)'s second sentence. Therefore, "the date of the final decision" relevant here was March 2, 2019, and Mr. Dojaquez received the correct amount of attorneys fees under § 5904(d).

First, we will examine the plain language of § 5904(d)(3) and the structure and text of § 5904(d) as a whole. Then, we will turn to Mr. Dojaquez's specific arguments in support of his interpretation of § 5904(d)(3).

## A

"In statutory construction, we begin 'with the language of the statute.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (quoting *Barnhart v. Sigman Coal Co.*, 534 U.S. 438, 450 (2002)). We also look to "the statute's structure, canons of statutory construction, and legislative history." *Perlick v. Dep't of Veterans Affs.*, 104 F.4th 1326,

1329–30 (Fed. Cir. 2024) (internal quotation marks and citation omitted). "If the statutory language is unambiguous and 'the statutory scheme is coherent and consistent' . . . '[t]he inquiry ceases.'" *Kingdomware Techs.,* 579 U.S. at 171 (quoting *Barnhart*, 534 U.S. at 450). We conclude that the meaning of § 5904(d)(3), when read in context, is unambiguous.

We begin with the first sentence of § 5904(d)(3), which provides that "past-due benefits" can be "awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims," and that "the Secretary may direct that payment of" "any fee" to the claimant's counsel. 38 U.S.C. § 5904(d)(3); *see also Ravin v. Wilkie*, 956 F.3d 1346, 1350 (Fed. Cir. 2020) (interpreting "may" as permissive). "[A]ny fee," as used in subsection (d)(3), refers to the attorneys fees calculated pursuant to subsection (d)(1). For its part, § 5904(d)(1) limits the "total fee payable" to the attorney to, at most, "20 percent of the total amount of any past-due benefits awarded on the basis of the claim." Subsection (d)(2)(A) then explains that "the total amount of the fee payable" to the claimant's attorney, which is capped at 20% of a claimant's past-due benefits, can be paid "directly from any past-due benefits awarded on the basis of the claim." Reading all subsections of § 5904(d) together, a claimant's attorney can only receive, at most, 20% of the claimant's past-due benefits under a contingency fee agreement governed by § 5904(d)(3), and those attorneys fees can be paid directly out of the claimant's past-due benefits.

The second sentence of § 5904(d)(3) explains that the Secretary cannot withhold attorneys fees from any of the claimant's benefits that are "payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims." This ensures that a claimant's recurring benefits payments, which already account for the additional benefits afforded in "the final decision . . . making (or ordering the

making of) the award," cannot be used to pay attorneys fees.

To be clear, an attorneys fees award is circumscribed by the amount of the past-due benefits a claimant receives. 38 U.S.C. § 5904(d)(1). Further, an attorney is disallowed from having her fees paid from a claimant's recurring benefits payments. 38 U.S.C. § 5904(d)(3). Attorneys fees can be paid directly out of the claimant's past-due benefits. 38 U.S.C. § 5904(d)(1), (2). Read together, we conclude that the most logical reading of the plain language of the statute is that the end date for the past-due benefits calculation, as laid out in § 5904(d)(1), is also "the date of the final decision" referenced in § 5904(d)(3)'s second sentence.

Helpfully, we previously interpreted § 5904(d)(1) in *Snyder*, resolving the meaning of "past-due benefits" and indicating which end date should be used to calculate past-due benefits. 489 F.3d at 1217–18. In *Snyder*, we were tasked with interpreting the "total amount of any past-due benefits awarded on the basis of the claim," as used in § 5904(d)(1). *Id.* at 1217. We concluded that "the 'total amount of any past-due benefits awarded on the basis of the claim' is the sum of each month's unpaid compensation—as determined by the claimant's disability rating—beginning on the effective date and continuing through the date of the award." *Id.* at 1218. In *Snyder*, the date of the award was in July 2002, when the agency "concluded . . . that [the veteran's] claim for service connection should have been approved at a disability rating of 70 percent effective July 25, 1994." *Id.* at 1214–15; *id.* at 1218 ("[I]t is undeniable that the VA awarded [the veteran] disability compensation at the 70 percent rating level in July 2002."). The agency did not notify the veteran of its July 2002 decision until January 2003, when the veteran received a letter explaining the veteran's total award amount. *Id.* at 1215; *see also id.* at 1218 (noting "the VA letter announcement in January 2003 of [the July 2002] award"). Therefore, under *Snyder* and § 5904(d)(1), past-

due benefits accrue from the effective date until the award decision. *See also, e.g.*, *Jackson v. McDonald*, 635 F. App'x 858, 860–63 (Fed. Cir. 2015) (non-precedential) (applying *Snyder*); *Rosinski v. Wilkie*, 32 Vet. App. 264, 267–71 (2020) (same). *Snyder*'s interpretation of § 5904(d)(1) further support our conclusion that the "date of the final decision . . . making (or ordering the making of) the award," as used in § 5904(d)(3), is the date of the agency decision, *not* the date that decision was communicated to the claimant.

If, instead, the date of "the final decision" under subsection (d)(3) differed from the end date for the past-due benefits calculation, an attorney could end up receiving more than 20% of the claimant's past-due benefits award contrary to subsection (d)(1) and/or receiving a portion of the claimant's recurring benefits payments contrary to subsection (d)(3). As the Veterans Court explained:

> Presumably, and nothing in the record indicates otherwise, Mr. Slaughter began receiving his recurring VA benefits payments at that rate from the date of the March 2019 decision. Allowing Mr. Dojaquez to obtain attorney fees based on the amount of money paid to Mr. Slaughter from March 2, 2019, through April 26, 2019, would permit him to receive fees from Mr. Slaughter's recurring benefits payments, which by definition are not past-due benefits.[3]

---

[3] On appeal, Mr. Dojaquez argues, without citation to record evidence, that "Mr. Slaughter did not receive payment from VA of his award of past-due benefits on March 2, 2019"; instead, "[h]e received his payment of his past-due compensation benefits after receiving VA's April 26, 2019 notice letter." Appellant's Br. 4. The Government responds

J.A. 6 n.3. Indeed, Mr. Dojaquez contends he is entitled to an "additional fee," Appellant's Br. 9, despite conceding that he is not challenging the amount of Mr. Slaughter's past-due benefits or the end date for the past-due benefits calculation, Appellants Br. 12 ("Mr. Dojaquez's argument is not that Mr. Slaughter's past-due benefits should be calculated using the date on which the Board actually mailed the underlying Board decision awarding benefits."). Mr. Dojaquez also does not argue that he did not receive 20% of Mr. Slaughter's past-due benefits. *Cf. Cox v. West*, 12 Vet. App. 522, 523 (1999) ("[I]t is generally in a veteran's interest to have an earlier termination date for past-due benefits so that less money is withheld from [her] benefits for attorney fees."). Mr. Dojaquez makes no meaningful attempt to explain how he would not receive more than 20% of Mr. Slaughter's past-due benefits under his proposed interpretation.

We conclude that § 5904(d)(3)'s reference to "the date of the final decision . . . making (or ordering the making of) the award," read in conjunction with § 5904(d)(1) and (2), refers to March 2, 2019, the date of agency decision assigning an effective date, not April 26, 2019, the date of the letter notifying Mr. Slaughter of the agency's earlier decision. We need go no further, as "the statutory language provides a clear answer." *Ravin*, 956 F.3d at 1350 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). Therefore, we find no error in the Veterans Court's

---

that this factual argument was not raised before the Veterans Court. Appellee's Br. 21 n.5; *see also* J.A. 6 n.3.

Regardless of whether this argument was properly raised, we lack jurisdiction to resolve such factual disputes under these circumstances. *See, e.g.*, 38 U.S.C. § 7292(d)(2)(B); *see also Prinkey v. Shinseki*, 735 F.3d 1375, 1381–82 (Fed. Cir. 2013).

determination that the Board properly calculated Mr. Dojaquez's attorneys fees under § 5904(d)(3) and we affirm.

B

Mr. Dojaquez makes a number of arguments in support of his interpretation of § 5904(d)(3), all of which we reject. Largely, Mr. Dojaquez attempts to conflate notice of a final decision and the final decision itself. For example, Mr. Dojaquez emphasizes that "[n]either Mr. Slaughter nor Mr. Dojaquez knew that VA had awarded past due benefits until the date of VA's notice and not the date of VA's decision." Appellant's Br. 12; *see also id.* at 11, 14, 21. But nothing in the language of § 5904(d) requires notice, and the award of past-due benefits in a rating decision from the agency is separate from notice of the decision awarding benefits. Therefore, this argument does not alter our interpretation of § 5904(d)(3).

Mr. Dojaquez next turns to two regulations to support his interpretation. First, Mr. Dojaquez relies on 38 C.F.R. § 3.104(a), which provides that an agency decision "is binding on all VA field offices . . . at the time VA issues written notification in accordance with 38 U.S.C. [§] 5104," to argue the agency's decision is not final prior to notification. Appellant's Br. 20–21. But this regulation plainly does not address what a "final decision" is, and to the extent it conflicts with the statute, the language of § 5904(d) governs. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("It is a commonplace of statutory construction that the specific governs the general." (cleaned up and citation omitted)). Second, Mr. Dojaquez turns to 38 C.F.R. § 3.160(d), but this regulation only addresses when a claim is "finally adjudicated" and not what constitutes a "final decision." Appellant's Br. 22. And, as Mr. Dojaquez admits, *id.* at 22–23, "[f]inality is variously defined; like many legal terms, its precise meaning depends on context," *Clay v. United States*, 537 U.S.

522, 527 (2003). Therefore, we see no tension between our interpretation of § 5904(d)(3) and 38 C.F.R. § 3.160(d) or 38 C.F.R. § 3.104(a).

Finally, Mr. Dojaquez contends that § 5904(d)(1) and *Snyder* do "not answer the question presented," Appellant's Br. 9, arguing that "[a]ll that was at issue in *Snyder* was whether § 5904(d)(1) meant what it said," Appellant's Reply Br. 9–10. We disagree with Mr. Dojaquez's attempt to read *Snyder* so narrowly and to interpret the statute such that there is tension between § 5904(d)(1), (2), and (3). As addressed in section III.A., our interpretation harmonizes each provision of § 5904(d), and we decline to adopt Mr. Dojaquez's strained interpretation of § 5904(d)(3).

## IV

We have considered Mr. Dojaquez's additional arguments and find them unpersuasive. Because "the date of the final decision . . . making (or ordering the making of) the award" as used in § 5904(d)(3) was March 2, 2019, the date of the agency decision assigning an effective date, and not the date Mr. Slaughter received notice of the decision, we affirm.

**AFFIRMED**

COSTS

No costs.